16 Neb. App. 610
IN RE ESTATE OF MYRTLE ALICE REIMERS, DECEASED.
JUDY WREHE, PERSONAL REPRESENTATIVE OF THE ESTATE OF MYRTLE ALICE REIMERS, DECEASED, APPELLEE,
v.
NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES, APPELLANT.
No. A-07-261.
Court of Appeals of Nebraska.
Filed March 25, 2008.
Jon Bruning, Attorney General, and David M. McManaman, Special Assistant Attorney General, for appellant.
John R. Higgins, Jr., of Huston & Higgins, for appellee.
IRWIN, SIEVERS, and MOORE, Judges.
SIEVERS, Judge.
This appeal is from probate proceedings in the county court for Hall County involving the estate of Myrtle Alice Reimers who died in Hall County on March 22, 2005. After Reimers died, an informal probate proceeding was initiated. After the estate was opened, the Nebraska Department of Health and Human Services (DHHS) filed a claim for reimbursement of Medicaid payments in the amount of $79,163.48 made on behalf of Reimers during her lifetime. The county court held a hearing after which a written decision was rendered denying DHHS' claim in its entirety. DHHS has now perfected its appeal to this court. Briefing is completed, and we have ordered that this case be submitted for decision without oral argument pursuant to our authority under Neb. Ct. R. of Prac. 11B(1) (rev. 2005).

FACTUAL AND PROCEDURAL BACKGROUND
The bill of exceptions in this case is composed solely of exhibit 2, which is a document produced by DHHS that is 122 pages in length. The exhibit begins with a "Certification Statement" that certifies that "the attached and incorporated Client Detail Report (07/17/1994 through 12/31/1998), Client Expense Report, (dated 01/01/1999 through 03/31/2005), and Waiver Services report (dated 07/17/1994 through 03/31/2005), represent a true and accurate reflection of Medicaid payments made by [DHHS] Finance and Support on behalf of the client (patient) identified." Citing applicable Nebraska statutes, the first page of exhibit 2 asserts that repayment for the amounts sought shall be made directly to DHHS. The first page then has the following list of items for which reimbursement is sought that we reproduce verbatim:

 Total of Client Expense Report
 (07/17/1994 to 12/31/1998): $ 7,941.17
 Total of Client Detail Report
 (01/01/1999 to 03/31/2005): $53,616.99
 Total of Waiver Services
 (07/17/1994 to 03/31/2005: $17,605.32
 __________
 Total Nebraska Medicaid Payment: $79,163.48

The first page of the exhibit then recites "[DHHS,] Finance and Support[,] Dave Cygan  Authorized Representative" below what appears to be the signature of Dave Cygan. Affixed to the document, to the right of the description and signature, is the gold official seal of DHHS. The county court's decision notes the personal representative's objection to the admission in evidence of exhibit 2 based on lack of foundation, but overrules the objection, citing Neb. Rev. Stat. § 68-919(4) (Supp. 2007)which statute we shall later discuss. The court said no further evidence was offered, and the matter was deemed submitted. The county court's decision on the merits of DHHS' claim for reimbursement states as follows:
The [Estate] argues that without testimony as to the meaning of Exhibit "2", the Court cannot enter a determination regarding the amount of the claim of [DHHS]. [DHHS] argues that Exhibit "2" is sufficient proof of its claim. The matter is submitted.
The Court being duly advised in the premises finds that the claim of [DHHS] should be and hereby is denied in the absence of further testimony or other evidence from [DHHS].

ASSIGNMENT OF ERROR
DHHS' sole assignment of error is simply that the county court erred when it disallowed the claim for reimbursement of medical assistance benefits provided to Reimers during her lifetime.

STANDARD OF REVIEW
[1,2] Appeals of matters arising under the Nebraska Probate Code are reviewed for error on the record. In re Estate of Weingarten, 10 Neb. App. 82, 624 N.W.2d 653 (2001). See, In re Guardianship of Zyla, 251 Neb. 163, 555 N.W.2d 768 (1996); In re Conservatorship of Estate of Martin, 228 Neb. 103, 421 N.W.2d 463 (1988). When reviewing an order for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Law Offices of Ronald J. Palagi v. Dolan, 251 Neb. 457, 558 N.W.2d 303 (1997).

ANALYSIS
[3-5] There is no dispute that for a good number of years prior to her death, Reimers received assistance from DHHS. Under the Medical Assistance Act, Neb. Rev. Stat. § 68-901 et seq. (Cum. Supp. 2006 & Supp. 2007), commonly known as Medicaid, a recipient generally becomes indebted to DHHS for assistance payments. See § 68-919(1). While the debt arising under such statute accrues during the recipient's lifetime, it is held in abeyance for payment until the recipient's death. See § 68-919(2). The personal representative of the estate of Reimers (Estate) does not dispute the assertion that DHHS is entitled to reimbursement under the circumstances set forth in the statute. However, the Estate refers us to § 68-919(2), which provides that the debt is recoverable only when the recipient is not survived by a "child who either is under twenty-one years of age or is blind or totally and permanently disabled as defined by the Supplemental Security Income criteria." The Estate argues that DHHS failed to prove that there was no surviving child as described in the statute, which is a precondition to reimbursement. We note that in DHHS'"Petition for Allowance of Claim," it was alleged that Reimers did not have such a surviving child. From the denial of the claim, we see that the Estate did not allege that this statutory provision prevented reimbursement. Accordingly, to the extent that this portion of § 68-919(2) creates a defense to DHHS' claim for reimbursement, the Estate failed to put such in issue before the trial court. It is well known that an issue not presented to or passed upon by the trial court is not an appropriate issue for consideration on appeal. See Haeffner v. State, 220 Neb. 560, 371 N.W.2d 658 (1985). This issue was not raised in the Estate's pleading, and the limited bill of exceptions does not reveal that it was raised before the county court. Accordingly, we need address it no further.
We now turn to the matter of exhibit 2. The Estate concedes that "the payment record [exhibit 2] was properly admitted." Brief for appellee at 2. Nonetheless, it is important to set forth the statute under which the exhibit was admitted, although given the Estate's concession, the core question for us ultimately becomes, What does exhibit 2 prove? Section 68-919(4) provides:
In any probate proceedings in which [DHHS] has filed a claim under this section, no additional evidence of foundation shall be required for the admission of [DHHS'] payment record supporting its claim if the payment record bears the seal of [DHHS], is certified as a true copy, and bears the signature of an authorized representative of [DHHS].
DHHS argues that exhibit 2 by itself proves its entitlement to reimbursement because "the exhibit itemized the dates the medical assistance was provided, the medical provider's name, the type of medical assistance provided whether it be the name of the prescription or the medical service performed, and the amount of the benefits which were allowed on . . . Reimers' behalf." Brief for appellant at 3.
Section 68-911, entitled "Medical assistance; mandated and optional coverage," lists 13 specified types of assistance which "shall" be covered and 19 which "may" be covered under the Medical Assistance Act. The Estate argues that DHHS' payment record, "in and of itself, is insufficient to satisfy [DHHS'] burden with respect to the claim" and that "[w]ithout further evidence, the exhibit does not establish that the individual entries refer to medical assistance or for that matter, which listed amounts, if any, were actually paid by [DHHS]." Brief for appellee at 3. The Estate also asserts that "[w]ithout additional evidence, the finder of fact is forced to guess as to the meaning of [the] numbers and references." Id. After our review of exhibit 2, the only evidence adduced, we conclude that each party is partially correct.
With respect to the contents of exhibit 2, DHHS breaks its claim down into three categories, as follows:

 Total of Client Expense Report
 (07/17/1994 to 12/31/1998): $ 7,941.17
 Total of Client Detail Report
 (01/01/1999 to 03/31/2005): $53,616.99
 Total of Waiver Services
 (07/17/1994 to 03/31/2005: $17,605.32
 __________
 Total Nebraska Medicaid Payment: $79,163.48

These categories by themselves do not tell the full story. However, to properly decide this matter, one simply has to examine the contents of the 122 pages of exhibit 2which we have done. To the extent that DHHS believes that because § 68-919(4) allows it to dispense with foundation for its listing of Medicaid payments, then its reimbursement claim is proved simply by the admission in evidence of exhibit 2, we reject that notion. All § 68-919(4) does is get exhibit 2 in evidence, as the trial judge ruled, and the Estate concedes in its brief that the admission of exhibit 2 was proper. What then becomes determinative is what is proved by the contents of the exhibit, considered in the context of the Act.
The first 88 pages of exhibit 2 (after the certification page) contain detailed listings of drugs, both prescribed and over the counter, as well as a variety of medical services received by Reimers for the period beginning July 17, 1994, and continuing through November 10, 1998. The format of these pages is uniform and for each "claim," typically a prescription, medication, or a doctor visit, there is listed horizontally across the page the following information for each claim: "Total Claim Charges," the "Third Party Amount," the "Amount Disallowed," the "Amount Reduced," the "Reimburse Amount," the "Net Claim Charges," and the "Allowed Amount." It is, of course, the "reimburse amount" category which is crucial under the act, because it is these amounts for which DHHS seeks reimbursement. Having examined each claim detailed on the first 88 pages of exhibit 2, we find that all indisputably fall within the categories delineated by § 68-911 for which the Estate owes DHHS reimbursement and that no further evidence by way of explanation of such claims is needed. The Estate introduced no evidence to show that such claims were not reimbursable. Therefore, the county court was clearly wrong and committed error on the record in disallowing reimbursement of the claims shown on the first 88 pages of exhibit 2. The total that DHHS is entitled to from this portion of the exhibit is $7,941.17.
We now turn to the next 28 pages of exhibit 2, encompassing drugs and medical services from January 1, 1999, to March 22, 2005, the date of Reimers' death. It is apparent that DHHS changed the format of its record keeping beginning with January 1, 1999. The format is that those pages are each entitled "Client Medicaid Expense Report," each has the name "Myrtle Reimers" at the top, and each then lists horizontally across each page the "Claim ID," the date, the "Provider ID and Name," the "Procedure Code/Product Name," the "Diagnosis Code," and the "Net Pay." The "net pay" column on these 28 pages totals $53,616.99. We do not set forth the details listed for each "Claim ID," of which there are 1,114 by our count, but again we have reviewed each page and the claim detailed thereupon. For example, the claims and payments range from a payment of $35.91 for "Adult Size Brief' with a "Diagnosis Code" of "Urinary Incontinence NOS" for Claim ID XXXXXXXXX, to a variety of medical services and drugs for such things as a dislocated hip, hip joint replacement, and cataracts. Again there is no evidence to dispute that all of the claims set forth on those 28 pages of exhibit 2 are not properly reimbursable under the act, and facially, the exhibit shows that such are reimbursable. Therefore, the county court was clearly wrong and committed error on the record in finding that the evidence was insufficient to order reimbursement in the amount sought, specifically $53,616.99.
[6,7] The third category for which DHHS seeks reimbursement, in the amount of $17,605.32, is entitled "Total of Waiver Services," and such comprises the last six pages of exhibit 2. There are five types of subtotaled expenses. The first is "Chore"with no further definitionand the amount sought is $13,262.82. The next is simply designated as "Emergency Refs," and the amount sought is $425. The third is simply "Escort" for $1,750.25. The fourth is "Escort Medic" for $350.25. The fifth is described only as "Respite in Hm" for $1,778. Inferentially, the five types listed on exhibit 2 and quoted above could possibly fall under one or more of the mandatory or optional medical services categories for which DHHS will pay under Medicaid, however to get to that conclusion, we would have to speculate or guess at the meaning of these cryptic terms. Moreover, the proof problems for such claims go deeper. Those six pages list only two columns of data: "Claim ID," followed by an amount. In sharp contrast to the other pages of exhibit 2 which we have discussed above, there are no names of providers, dates of service, or information whether Reimers was institutionalized at the time of service (facts which can determine whether a payment is reimbursable under the act), reasons for service, or associated diagnoses. Accordingly, as opposed to the claims for reimbursement upon which we have reversed the county court's decision, all of the claims on the last six pages of exhibit 2 need, as the county court found, further evidence to establish that the amounts listed are in fact reimbursable by the Estate under § 68-919. In summary, the statute providing for admission of DHHS' payment record, § 68-919(4), clearly dispenses with foundation for the admission of the record if properly certified, as exhibit 2 was. However, the statute does not create any presumption that the amounts shown on the payment record are reimbursable by the recipient's estatesuch must still be proved, and if the exhibit does not do so, then additional evidence is needed. Given that DHHS did not supplement exhibit 2 by other testimony or evidence, we cannot determine from the face of the payment record that the items set forth on the last six pages of exhibit 2 (in the category of "Waiver Services") are reimbursable under § 68-919. In short, with respect to those claims, DHHS did not carry its burden of proof.

CONCLUSION
For the reasons set forth above, we reverse the decision of the county court for Hall County and find that the Estate is obligated to reimburse DHHS in the amount of $61,558.16. We affirm that portion of the decision of the Hall County Court which found that the Estate was not obligated to reimburse DHHS in the amount of $17,605.32 for that portion of its claim entitled "Waiver Services." We remand the cause to the county court for Hall County for entry of judgment in accordance with our opinion.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED.