# IN THE SUPREME COURT OF IOWA

No. 12–1593

Filed January 10, 2014

**IN THE MATTER OF THE ESTATE OF ARNOLD MELBY,** Deceased

**IOWA DEPARTMENT OF HUMAN SERVICES,**

Appellant,

vs.

**JAMES D. LOHMAN,**

Appellee.

Appeal from the Iowa District Court for Monona County, Steven J. Andreasen, Judge.

The Iowa Department of Human Services appeals a district court ruling on the department's claim in probate for recovery of Medicaid payments made for services provided to an elderly married couple. **REVERSED AND REMANDED.**

Thomas J. Miller, Attorney General, and Barbara E.B. Galloway and Timothy L. Vavricek, Assistant Attorneys General, for appellant.

Bradley J. Nelson of Norelius Nelson PC, Denison, for appellee.

**HECHT, Justice.**

The Iowa Department of Human Services appeals from a district court ruling on the department's claim in probate for recovery of Medicaid payments made for services provided to an elderly married couple. The recipients of the services were trustors of separate irrevocable trusts. The district court's ruling concluded the trustors' interests in the trusts were limited to their right to receive the net income from the trusts' assets, and the department's statutory right to recover the Medicaid payments could be enforced against such income, but not against the corpus of the trusts. We conclude the department's right to recover Medicaid payments under the facts of this case extends beyond the trustors' net income interests. We further conclude the district court erred in its determination of the scope of medical assistance for which recovery has been authorized by the general assembly. Accordingly, we reverse and remand for further proceedings.

## I. Background Facts and Proceedings.

Arnold and Vesta Melby (the Melbys) owned a farm in Monona County. In 1991, Arnold and Vesta created substantially identical irrevocable trusts and funded the trusts with their respective one-half interests in the farm. The trusts named the Melbys' son Duane as trustee.

The trusts contained several terms addressing administration. The trusts were to pay net income to their respective trustors while the trustors were living.[1] Upon the death of a trustor, in the event the trustor had no other resources available, each trust was to pay "all

[1]The record reveals the trusts never reported any substantial annual income and rarely reported any income at all.

expenses of" its respective trustor's "last illness and funeral," "any indebtedness owed by the Trustor," and "any estate tax, gift tax, inheritance tax or income tax owed by the Trustor."[2]  Each trust also provided the surviving spouse net income from the decedent spouse's trust upon the decedent's death.  Then, following the deaths of both trustors, each trust directed any remaining assets be distributed in equal shares to the Melbys' three children.

In November 2000, Vesta was deemed eligible for and began receiving Medicaid benefits.  She passed away in December 2002.  The Iowa Department of Human Services (the department) later advanced evidence it had made Medicaid payments totaling $53,118.62 on Vesta's behalf.  Vesta's assets at the time of her death, excluding any interest in the corpus of her trust, totaled $661.97, and her estate was probated without present administration.

After Vesta's death, Duane submitted a Medicaid Debt Response Claim Form and information about Vesta's trust for the department's review.  The director of the department concluded there were no assets in Vesta's estate from which the department could recover the Medicaid payments it had made on her behalf.  The department advised Duane to dispose of the trust assets as he deemed appropriate.  Because Arnold

---

[2]This provision stated in its entirety:

> The Trustee, if there are no other resources owned by the Trustor available, shall pay from the trust all expenses of the last illness and funeral of the Trustor, any indebtedness owed by the Trustor, and any estate tax, gift tax, inheritance tax or income tax owed by the Trustor.  If there are other funds available in Trustor's estate for the payment of the above-noted expenses, then the Trustee shall pay these expenses from the trust only after the other resources in the estate of the Trustor have been exhausted.

was still living, Vesta's trust was administered to provide him with net income in accordance with the surviving spouse provision.

In January 2002, Arnold was deemed eligible for and began receiving Medicaid benefits. Arnold continued to receive Medicaid benefits for several years, until he passed away in November 2009. The department later advanced evidence it had made Medicaid payments totaling $251,254.14 on Arnold's behalf. Arnold's assets at the time of his death, excluding any interest in the corpus of his trust or Vesta's trust, totaled $2529.25.[3]

Following Arnold's death, Duane and the Melbys' daughter Sharon were appointed coexecutors of Arnold's estate (the estate). Duane submitted a new Medicaid Debt Response Claim Form to the department's Estate Recovery Program, detailing Arnold's assets and expenses and his trust information. Reviewing Arnold's trust documentation, the department concluded Arnold had an interest in his trust beyond the net income interest from which the department could recover the Medicaid payments it had made on his behalf.

The department's review of Arnold's file also prompted a new review of Vesta's file. After this second review, the department concluded it had mistakenly determined Vesta held no interest in her trust beyond her net income interest from which the department could recover the Medicaid payments made on her behalf. The department therefore notified the estate it would seek reimbursement for all Medicaid expenses it had paid on behalf of Arnold and Vesta, in the total amount of $321,263.96.

---

[3]As noted above, the farm had produced very little income while held in the Melby trusts.

Duane and Sharon filed a petition for probate of Arnold's estate as a small estate. The department filed its Medicaid recovery claim, but the claim was denied. In December 2010, the farm was sold for $904,024 and proceeds were set aside in an amount sufficient for repayment of the Medicaid claim if required by an order of the court. In January 2011, Duane passed away, and Sharon was appointed as successor trustee of both trusts. Sharon transferred the sale proceeds from Iowa to Oregon, where she resides.[4]

The department filed an application in the estate seeking a judgment declaring the Melbys had interests in the corpus of their trusts—in addition to the income interests—that should be counted as assets available for repayment of the department's Medicaid claim. The estate filed its resistance again denying the department's claim. The trustee of the Melby trusts filed a general appearance and answer joining in the defenses asserted by the estate.

After a bench trial on the department's contested claim and application in September 2011, the district court concluded the Melbys' interests in the trusts at the time of their deaths were limited to net income from the trusts, and thus the department's right to recover was limited to $3191.22. Both the department and the estate then moved to enlarge and amend the district court's ruling. After considering these motions, the district court amended its order, ruling: (1) the Medicaid payments made on behalf of the Melbys did not constitute debts of the Melbys under Iowa's Medicaid recovery statute—instead, the payments constituted debts of the Melbys' estates; (2) the department was entitled

---

[4]Although she continued to serve as trustee, Sharon was succeeded by James Lohman as executor of Arnold's estate.

to recover from the income interests available to the Melbys at the time of their deaths but was not entitled to recovery from the corpus of the trusts; (3) any right of recovery for Medicaid expenses established under the recovery statute was limited to "medical assistance" as defined in section 249A.2(7) of the statute; (4) the department had provided sufficient evidence to establish the amounts it paid on behalf of the Melbys; (5) the department had failed to demonstrate its Medicaid payments constituted "expenses of last illness" as contemplated by the language of the trusts given the structure of the probate debt classification provision in Iowa Code section 633.425; (6) the court had jurisdiction to decide the department's claims notwithstanding the location of the trust assets in Oregon.

On appeal, the department asserts the district court erred in limiting the department to recovery from the Melbys' income interests in the trusts. The department contends caselaw and the language and structure of the Medicaid recovery statute instead establish the department's right to recover from both the Melbys' income interests and the corpus of the trusts. The department also contends the district court erred in concluding the department was limited to recovery of expenses incurred for provision of the narrowly drawn categories of services listed within the definition of "medical assistance" in section 249A.2(7) of the recovery statute. The plain language of the recovery provision at issue, the department argues, allows for a broader recovery. The estate cross-appeals, contending the district court erred in determining the department produced substantial evidence it had paid medical assistance under Iowa Code section 249A.5(2), and therefore, the district court should have denied any recovery.

**II. Scope of Review.**

The department's claims in this case were tried in a probate proceeding. Contested claims in probate are tried and reviewed at law. Iowa Code § 633.33 (2011); *see also In re Barkema Trust*, 690 N.W.2d 50, 53 (Iowa 2004) (citing Iowa Code § 633.33). We review the district court's interpretation of statutory provisions for errors at law. *In re Estate of Whalen*, 827 N.W.2d 184, 187 (Iowa 2013).

**III. Discussion.**

**A. Recovery of Medicaid Payments Under Section 249A.5.** We have previously undertaken a three-part analysis in determining whether certain trust assets may be subject to Medicaid recovery under our Medicaid recovery statute's provisions. *See Barkema*, 690 N.W.2d at 53, 55–56; *see also In re Estate of Gist*, 763 N.W.2d 561, 565 (Iowa 2009). That analysis has typically required a classification of the trust at issue, a determination of whether the beneficiary's interest in the trust is a type included in the recovery statute's definition of the recipient's estate, and a determination of whether that interest existed at the time of the medical assistance recipient's death. *See Gist*, 763 N.W.2d at 565.[5]

1. *Trust classification.* The Medicaid recovery statute defines a Medicaid assistance recipient's estate, for purposes of Medicaid recovery, as including any asset "in which the recipient . . . had any legal title or interest . . . including . . . interests in trusts." Iowa Code § 249A.5(2)(*c*). In both *Barkema* and *Gist*, we were tasked with determining the nature

---

[5]While we have previously characterized these inquiries as constituting an analytical framework proceeding in discrete steps and in a specific order, *see In re Estate of Gist*, 763 N.W.2d 561, 565 (Iowa 2009), we think it prudent to note that, depending on the circumstances, whether trust assets are available under the statute for satisfaction of the department's claim may be resolved by *any* of the three inquiries, and thus the analysis need not follow the same sequence in every case.

of a decedent Medicaid recipient's interest in a trust. *See Gist,* 763 N.W.2d at 564–65; *Barkema,* 690 N.W.2d at 53–55. In each case, the decedent's estate disputed the extent of the recipient's interest, aiming to prevent Medicaid recovery from the corpus of the trust. *Gist,* 763 N.W.2d at 563; *Barkema,* 690 N.W.2d at 53. In each case, precise classification of the trust at issue was instructive, because classification allowed us to determine the extent to which the assets from the trusts would have been available for the support of the beneficiaries.[6] *Gist,* 763 N.W.2d at 565–66; *Barkema,* 690 N.W.2d at 55–56. Those determinations then allowed us to decide whether, given the specific trust at issue, the Medicaid recipient's interest extended to the trust corpus for purposes of the definition of "estate" in section 249A.5(2)(*c*). *Id.*

The parties' respective characterizations of the Melbys' trusts are not identical. The department describes the devices as "self-settled, irrevocable *inter vivos* trusts" with "spendthrift clause[s]" and "mandatory obligation[s] to use the net income for the benefit of the respective trustors during their lifetimes, to pay the expenses of the trustors' last illnesses, their funeral expenses, their debts, and certain taxes." The estate characterizes the trusts as discretionary support trusts with standards.[7] We conclude, however, neither party's proposed

---

[6]We concluded the trust instrument at issue in *Barkema* established a discretionary support trust with standards. *In re Barkema Trust,* 690 N.W.2d 50, 55–56 (Iowa 2004). We concluded the same for the trust in *Gist. Gist,* 763 N.W.2d at 566.

[7]The Melbys were entitled without limitation to the net income of their trusts during their lifetime. The trusts further provided if a beneficiary had not attained the age of twenty-five when both of the trustors had died, the trusts would continue for such beneficiary until he or she attained the age of twenty-five. In the interim, the trustee was granted sole discretion to determine the distribution of income or principal, and principal could be disbursed "only to provide for the education, health, support and maintenance of the beneficiary."

classification has much bearing on our determination of whether the recovery statute allows the department's recovery in this case.

In deciding whether a Medicaid recipient has an interest in a trust extending to the trust corpus for purposes of recovery, we must determine the extent to which the "assets of a trust are actually available to a trust beneficiary." *Barkema*, 690 N.W.2d at 55. Because the parties agree here that regardless how the trust is classified, the Melbys had an interest in payment of any debts they owed from the assets of the trusts, our determination of whether the department can recover from the corpus of the trusts will turn on whether the provision of Medicaid assistance creates a debt owed by the recipient of the assistance under the recovery statute. We turn to that question now.

2. *The Melbys' interests in the trusts and section 249A.5(2)(c).* As previously noted, after reviewing the language of the recovery statute and the language of the Melby trusts, the district court concluded the department could recover only from the Melbys' income interests in their trusts. The district court acknowledged the Melbys had an interest in the trusts for payment from both the trust income and corpus of any "indebtedness owed," but determined the language of section 249A.5(2) forecloses the possibility Medicaid payments may constitute debts of individual recipients. In particular, the district court concluded the statute creates a debt due the department not from the recipient of the services, but "*from the individual's estate.*" *See* Iowa Code § 249A.5(2) (emphasis added).

The parties agree the Melbys had an interest in payment of their debts from the trusts; they dispute instead the district court's conclusion that the language of the recovery provision does not allow for characterization of the medical assistance paid on behalf of the Melbys

as debts of the Melbys as individuals. The estate contends the district court correctly concluded the general assembly's directive that the provision of medical assistance "creates a debt due from the individual's estate" forecloses a determination that the assistance may create a personal debt of the recipient. The estate emphasizes the general assembly used different language in section 249A.5(1) in making incorrectly paid Medicaid assistance "recoverable from the provider, or from the recipient, while living, as a debt due the state." *See id.* § 249A.5(1). That language, the estate suggests, clearly makes incorrectly paid assistance a personal debt due from an individual. The contrasting language in section 249A.5(2), the estate argues, indicates a clear distinction between the statutory treatment of improperly paid assistance and properly paid assistance and indicates only the former may constitute the debt of a recipient.

The department dismisses the estate's argument as unavailing because we previously rejected a related argument in *In re Estate of Nagel*, 580 N.W.2d 810 (Iowa 1998). In *Nagel*, we considered whether an automobile accident victim's estate could reach the corpus of a decedent's trust for payment of a wrongful death claim. *Id.* at 811. The language of the trust created an interest for the decedent trustor similar to the interest created here—namely, it required that "any indebtedness owed by the Trustor" be paid from the assets of the trust. *Id.* The decedent's trustee argued the trust's corpus could not be reached for payment of the wrongful death claim, because the claim was not a debt owed by the trustor—the claim arose only after the trustor's death. *Id.* at 812. We rejected that argument, reasoning that even if the tort claim had not been reduced to judgment until after the trustor's death, the

facts precipitating the claim had arisen during the trustor's lifetime, and thus the claim could constitute a debt owed by the trustor. *Id.*

The department suggests our reasoning in *Nagel* should apply here because the department's payments of the Melbys' Medicaid expenses occurred during their lifetimes. Such payments, the department argues, created a debt owed by the Melbys payable from the trust assets, just as the accident in *Nagel* created a debt owed by the trustor. In *Nagel*, however, we were not required to consider the effect of our Medicaid recovery statute, because there we confronted solely the interaction of a wrongful death claim and a decedent's interest in a living revocable trust. Here, by contrast, the general assembly's enactment of the recovery statute requires we look to the statute in determining the nature and genesis of the debt created by the department's payment of the Melbys' Medicaid expenses.

Iowa's Medicaid recovery statute establishes that

[t]he provision of medical assistance to an individual who is fifty-five years of age or older . . . creates a debt due the department from the individual's estate for all medical assistance provided on the individual's behalf, upon the individual's death.

Iowa Code § 249A.5(2).[8] The statute adds "[t]he department shall waive the collection of the debt created under this subsection from the estate of

---

[8]We note at common law, a recipient of public assistance was not obligated to reimburse the state for payments made on the recipient's behalf. *See State ex rel. Dep't of Human Servs. v. Brooks*, 412 N.W.2d 613, 614 (Iowa 1987). The common law rule was modified with respect to Medicaid benefits in 1994 when Iowa adopted its recovery statute. *See* 1994 Iowa Acts ch. 1120, § 10 (codified at Iowa Code § 249A.5(2) (1995)). The estate contends the statute nevertheless maintains a presumption against recovery, relying on the first paragraph of section 249A.5, which provides "[m]edical assistance paid to, or on behalf of, a recipient or paid to a provider of services is not recoverable, except as provided in subsection 2, unless the assistance was incorrectly paid." Iowa Code § 249A.5(1) (2011). But as that language itself suggests, the language informs, but cannot answer directly, the question of what recovery section 249A.5(2) authorizes, which is the inquiry we must address here.

a recipient of medical assistance" to the extent collection "would result in . . . [r]eduction in the amount received from the recipient's estate by a surviving spouse . . . ." *Id.* § 249A.5(2)(*a*)(1). In the event collection of a debt is waived under that subsection, the statute provides "the amount waived shall be a debt due from . . . [t]he estate of the medical assistance recipient's surviving spouse . . . upon the death of such spouse," to the extent "the medical assistance recipient's estate was received by" the surviving spouse. *Id.* § 249A.5(2)(*b*)(1).

At first glance, section 249A.5(2) may be read to suggest the department's medical assistance payments are strictly debts of the recipient's estate and foreclose the possibility payments create debts owed by the recipients themselves, consistent with the interpretation of the estate and the district court. We note, however, the statutory language says nothing about the timing of the creation of the debt—instead, the language merely makes clear that medical assistance payments will create a debt and that the debt will be due the department from the recipient's estate upon the recipient's death. *See id.* ("The provision of medical assistance . . . creates a debt due the department from the individual's estate for all medical assistance provided on the individual's behalf, upon the individual's death."). In other words, the statute leaves room for the possibility that either: (1) the department's provision of medical assistance creates a debt upon the recipient's death, at which point the debt is payable from the recipient's estate; or (2) the department's provision of medical assistance creates a debt immediately, and that debt will be due from the recipient's estate upon the recipient's death.

Given this ambiguity, the legislature's use of specific language to distinguish debt recoverable from a living recipient in section 249A.5(1)

from debt recoverable from an estate upon a recipient's death in section 249A.5(2) does not dispose of our inquiry here. Section 249A.5(1) merely provides incorrectly paid assistance may be recovered from a recipient while living or, upon the recipient's death, recovered "as a claim classified with taxes having preference under the laws of this state." *Id.* § 249A.5(1). That language suggests the general assembly distinguished the timing of recovery of incorrectly paid assistance from the timing of recovery of correctly paid assistance, but like the language of section 249A.5(2), the language of section of 249A.5(1) makes no reference to when, precisely, the debt for incorrectly paid medical assistance is created.

In previously examining section 249A.5 language having multiple possible meanings, we have considered the language itself in the context of the subject matter of the statute, the statute's purpose and underlying policies, and any consequences of adopting the dueling interpretations. *See Barkema*, 690 N.W.2d at 55. The Medicaid program was designed to serve individuals and families lacking adequate funds for basic health services, and it was designed to be a payer of last resort. *Id.* In Medicaid eligibility-determination cases, we have said the program contemplates that families will spend available resources first, and when those resources are completely depleted, Medicaid may provide payment. *See Strand v. Rasmussen*, 648 N.W.2d 95, 106 (Iowa 2002). In Medicaid recovery cases, we have permitted the department's recapture of the value of a medical assistance recipient's life estate after the death of the recipient, concluding the Iowa legislature has chosen to define "estate" for purposes of the Medicaid recovery statute more broadly than required by federal law. *See In re Estate of Laughead*, 696 N.W.2d 312, 316–17 (Iowa 2005); *see also In re Estate of Serovy*, 711 N.W.2d 290, 294 (Iowa

2006) ("The purpose of this legislation was to capture and make available for payment of Medicaid-reimbursement claims certain interests in property that are not ordinarily subject to the payment of a decedent's debts."). We have also allowed recovery from a Medicaid recipient's interest in a discretionary support trust following the death of the recipient, despite the fact that any interest in the trust was to pass to a named beneficiary upon the recipient's death. *Barkema*, 690 N.W.2d at 54–56. Recovery in these scenarios, we have explained, is consistent with the Medicaid program's broad purpose of providing for care for those in need, and allowing for recovery by the state in these instances frees more funds for provision of future services. *See id.* at 55 (citing *Estate of DeMartino v. Div. of Med. Assistance & Health Servs.*, 861 A.2d 138, 144 (N.J. Super. Ct. App. Div. 2004)); *cf.* Iowa Code § 249A.4(1) (requiring director to "[d]etermine the greatest amount, duration, and scope of assistance which may be provided . . . under this chapter within the limitations of available funds").

With this broad purpose in mind, we think it prudent to resolve the ambiguity regarding the timing of creation of medical assistance debt in section 249A.5(2) in favor of the department's recovery here. Our interpretation creating the debt immediately upon provision of assistance rather than at the death of the recipient, and allowing recovery from the corpus of the trust, is consistent with the Medicaid program's goal of recovering from those with an ability to pay so as to make future funds available for those having the most need.[9] *Cf. Laughead*, 696 N.W.2d at

---

[9]We note several other jurisdictions dealing with estate recovery have taken a similar approach and characterized Medicaid debt as created during the lifetime of the recipient. *See, e.g., Estate of Wood v. Ark. Dep't of Human Servs.*, 894 S.W.2d 573, 576 (Ark. 1995) (explaining relationship created after enactment of Arkansas's estate recovery statute "was as if [the recipient] had a loan from [the department] to be repaid

315 ("[I]t is the receipt of benefits that gives rise to the repayment obligation."). This reading, providing for creation of a debt when the medical assistance is provided, dovetails appropriately with our legislature's very clear deviation from federal law in defining "estate" under the recovery statute to broadly include interests available to the recipient only during the recipient's lifetime. *See id.* at 317; *see also* Iowa Code § 249A.5(2)(*c*) (defining "estate" for purposes of the recovery statute as "including but not limited to interests in jointly held property, retained life estates, and interests in trusts").

Moreover, immediate debt creation is consistent with the operation of section 249A.6, which establishes that when the department makes payment "for medical care . . . on behalf of a recipient, the department shall have a lien, to the extent of those payments, upon all monetary claims which the recipient may have against third parties." Iowa Code § 249A.6(2). Setting forth the mechanics for the operation of this section, section 249A.6(3) requires recipients to "notify the department of any possible [monetary] claims when those claims arise," suggesting the department may have an interest in immediate pursuit of those claims. *Id.* § 249A.6(3). Section 249A.6(1) requires the recipient to both "[a]ssign to the department any rights to payments of medical care from any third party," and "[c]ooperate with the department in identifying and providing

---

from the assets of her estate"); *In re Estate of Reimers*, 746 N.W.2d 724, 728 (Neb. Ct. App. 2008) ("While the debt arising under [the estate recovery] statute accrues during the recipient's lifetime, it is held in abeyance for payment until the recipient's death."); *In re Estate of Hooey*, 521 N.W.2d 85, 87 (N.D. 1994) ("Although the [d]epartment's ability to enforce the claim was tolled until [the recipient]'s death, the obligation [to repay] was incurred by [the recipient] during her lifetime."); *In re Estate of Burns*, 928 P.2d 1094, 1099 (Wash. 1997) ("The precipitating event is, therefore, the receipt of the benefits giving rise to the contingent indebtedness, and not the creation of the decedent's estate.").

information to assist the department in pursuing any third party who may be liable to pay for medical care . . . ," again suggesting immediate debt creation. *See id.* § 249A.6(1)(*a*). And in scenarios where a recipient incurs court costs or attorney fees for the purpose of enforcing a monetary claim upon which the department has a section 249A.6 lien, section 249A.6(5) provides upon receipt of the settlement or judgment, the court costs and reasonable attorney fees shall first be deducted from the total judgment, the recipient shall receive one-third of the remaining total, and the department's lien is then to be repaid from the remaining balance. *Id.* § 249A.6(5). Although these provisions make no specific reference to the timing of the creation of medical assistance debts, a plain reading of each suggests the debt for provision of medical services is created during a recipient's lifetime, and thus section 249A.6 guides our conclusion here.

Two additional features of the statutory language and structure inform our conclusion here. Section 249A.5(2) includes a comma late in its directive, separating the clause "creates a debt due the department from the individual's estate for all medical assistance provided on the individual's behalf," from the clause "upon the individual's death." *Id.* § 249A.5(2). In the absence of the comma, we might conclude the provision envisioned only those services provided on behalf of a recipient in close temporal proximity to the recipient's death would create a debt, because the statute would then direct that provision of medical assistance "creates a debt due the department . . . for all medical assistance provided on the individual's behalf upon the individual's death." That result would clearly be at odds with the purpose of the statute—broad recovery so as to make funds available for future provision of services—and at odds with our interpretation of the

provision in prior caselaw. *See, e.g.*, *Laughead*, 696 N.W.2d at 314, 315 (concluding decedent's estate was liable for all Medicaid benefits paid on decedent's behalf over seven years, including nursing home care). The inclusion of the comma suggests a distinction between the timing of the provision of services and the timing of the recipient's death, thereby making all medical assistance provided on a recipient's behalf—including but not limited to those services provided at death—recoverable. We think it reasonable to conclude, based on the use of the comma to distinguish the timing of the provision of services from the timing of the recipient's death and the inclusion of the debt creation principle in the clause making reference to the provision of services, the statutory language indicates the timing of the debt creation matches the timing of the provision of services, as opposed to the timing of the recipient's death.

Our interpretation of the section 249A.5(2) recovery language is also supported, indirectly, by the mechanics of the waiver and substitute-recovery provisions of sections 249A.5(2)(*a*) and 249A.5(2)(*b*), mentioned above. Section 249A.5(2)(*a*) provides for the department's temporary waiver of collection of debt from a recipient's estate in the event collection would result in reduction in the amount received from the estate by a surviving spouse or a surviving child under age twenty-one with a disability, or in the event collection would otherwise work an undue hardship as determined on the basis of federally established criteria. *See* Iowa Code § 249A.5(2)(*a*)(1) (allowing for waiver of collection if collection would result in reduction of amount received by surviving spouse or child); *id.* § 249A.5(2)(*a*)(2) (allowing for waiver of collection if collection would work undue hardship). In the event collection is waived under section 249A.5(2)(*a*), however, section 249A.5(2)(*b*) provides for

reciprocal recovery from the estate of the surviving spouse upon the spouse's death, or from the surviving child when the child reaches age twenty-one, or from the recipient of a hardship waiver when the hardship no longer exists. *See id.* § 249A.5(2)(*b*)(1)–(3). Although these provisions cannot tell us much explicitly about the genesis of the medical assistance debt, they lend support to the conclusion the statute requires the department regard medical assistance debts as immediately established but also directs the department defer collection of these debts, out of respect for the recipient and the recipient's vulnerable kin, until a time at which collection would work less hardship. *See, e.g., id.* § 249A.5(2)(*b*)(3) (allowing for recovery from a hardship waiver recipient when the hardship no longer exists); *cf. Gist,* 763 N.W.2d at 568 (noting our legislature took "a more humanitarian approach" in "allowing recipients to keep certain assets to pay for items not covered by Medicaid" and explaining "[t]o the extent such assets are not exhausted at the time of the recipient's death, however, the legislature allows the State to recoup its payments from those assets").

Based on the language of the recovery provision, the structure and purpose of the statute, and our prior caselaw, we conclude section 249A.5(2) establishes a debt owed by the recipient of medical services when the services are provided, while mandating the department will refrain from collecting that debt until the death of the recipient. Therefore, we conclude section 249A.5(2)(*c*)'s broad definition of the estate assets from which the department may recover Medicaid payments encompasses the Melbys' interests in payment of their debts from the corpus of their trusts.

3. *The Melbys' interests at the time of their deaths.* In *Barkema,* we explained the department may recover its debt under the recovery statute

from any interest in trust the recipient had at the time of the recipient's death. *See Barkema*, 690 N.W.2d at 56; *see also* Iowa Code § 249A.5(2)(*c*). We concluded the statutory requirement the interest be available "at the time of the recipient's . . . death" meant the interest must be available at the time immediately preceding the recipient's death, reasoning that any definition contemplating some later time would render portions of the recovery statute meaningless. *See Barkema*, 690 N.W.2d at 56.

Here, although the district court concluded the Melbys' interest in the trusts at the time of their deaths was limited to the net income of the trust, we note the parties agree the plain language of the trust dictates that at the time immediately preceding the deaths, the Melbys had an interest in payment from the trusts of "any indebtedness owed by the Trustor." Because we have determined the recovery statute creates a debt immediately upon provision of services to a Medicaid recipient, we conclude the Melbys had interests in the corpus of their trusts at the time of their deaths from which the department may recover. *Cf.* Iowa Code § 633A.2304 ("If a settlor is a beneficiary of a trust created by the settlor, a transferee or creditor of the settlor may reach the maximum amount that the trustee could pay to or for the settlor's benefit."); *Gist*, 763 N.W.2d at 566–67 (concluding department could recover from trust to the extent creditors could have reached decedent's interest in the trust).

**B. The Meaning of "Medical Assistance" in Section 249A.5(2) and the Sufficiency of the State's Evidence.**

1. *The meaning of "medical assistance" in section 249A.5(2).* As noted, the district court concluded the department's right to recover under section 249A.5(2) was limited to recovery of expenses paid in

providing services constituting medical assistance as defined in section 249A.2(7). Recognizing the general assembly defined "medical assistance," "additional medical assistance," and "discretionary medical assistance" separately in section 249A.2, and observing section 249A.5(2) refers only to recovery of "medical assistance" and "all medical assistance," the district court reasoned the general assembly would have included references to additional and discretionary medical assistance in section 249A.5(2) had the statute been designed to allow for recovery of payment for those categories of services.

The estate contends the district court's reasoning was sound and adds that "medical assistance" and "additional medical assistance" are used elsewhere in the statute to signify that provision of certain services would be mandatory while provision of others would be within the discretion of the department as costs and available funds might allow. Any reading failing to maintain the general assembly's classification scheme for provision of these services, the estate insists, would bankrupt our Medicaid system.

The department counters that the general assembly's use of the phrase "all medical assistance" in section 249A.5(2) signifies a departure from the narrower meaning of "medical assistance" in section 249A.2(7) and allows for broader recovery, including assistance provided as "additional medical assistance" and "discretionary medical assistance." Further, the department argues, an evaluation of the entirety of chapter 249A reveals the general assembly rarely used the phrases "additional medical assistance" and "discretionary medical assistance," and instead freely used the phrases "medical assistance" and "medical assistance program" in contexts where their meanings might encompass provision of "additional medical assistance" and "discretionary medical assistance."

The department contends the use of the phrase "all medical assistance" in section 249A.5(2) constitutes an instance where the statute incorporates this broader meaning.

When construing statutes, we assess not just isolated words and phrases, but statutes in their entirety, and we avoid constructions rendering parts of a statute redundant, irrelevant, or absurd. *See Iowa Beta Chapter of Phi Delta Theta Fraternity v. State*, 763 N.W.2d 250, 260 (Iowa 2009). Absent a statutory definition or meaning established by law, "we give words their ordinary and common meaning by considering the context in which they are used." *Id.* We construe statutory provisions in ways that best achieve a statute's purpose. *Id.*

We have previously explained Congress gave states wide latitude in seeking Medicaid recovery and allowing recovery from the estates of those who have received assistance furthers Medicaid's broad purpose of providing for medical care of the needy. *See Barkema*, 690 N.W.2d at 55. We have also noted the general assembly used broad language in chapter 249A, enabling broad recovery and promoting as much care as possible for those in need. *Id.* at 55–56; *cf. Gist*, 763 N.W.2d at 565 (noting section 249A.5 includes an "expansive" definition of "estate" for recovery purposes); *Serovy*, 711 N.W.2d at 293 (observing the legislature's 1994 amendment of section 249A.5 "expanded the category of assets" reachable by the department for recovery of assistance provided to Medicaid recipients).

Here, the general assembly has not defined the phrase "all medical assistance," but it previously defined the phrase "medical assistance" to mean "payment of all or part of the costs of the care and services required to be provided by Tit. XIX of the federal Social Security Act . . . ." Iowa Code § 249A.2(7) (2011). An isolated reading of that

definition in conjunction with the more discretionary definition of "additional medical assistance" might suggest, as the estate contends, our statute duplicates without deviation the mandatory–additional–discretionary classification scheme of the federal act in each instance a concept involving the provision of medical services appears in our own statute. A closer reading of section 249A.5(2) in the context of chapter 249A, however, reveals the phrase "all medical assistance" in section 249A.5(2) cannot be read as narrowly as the definition of "medical assistance" in section 249A.2(7).[10]

In examining this question, we observe chapter 249A, entitled the "Medical Assistance Act," *id.* § 249A.1, establishes the framework for the department's administration of Iowa's Medicaid program—a program that by the terms of the statute encompasses the provision of mandatory, additional, and discretionary services and care as defined by both our statute and the federal statute. We think it instructive the general assembly used the phrase "medical assistance" and not some different phrase in titling the statute for this broad-reaching program. More importantly, we note for purposes of the recovery portion of the statute, a

---

[10]The general assembly has recently amended the definition of "medical assistance" in subsection 249A.2(7), largely eliminating this confusion for cases involving provision of services going forward. The definition now provides that medical assistance "means payment of all or part of the costs of the care and services made in accordance with Tit. XIX of the federal Social Security Act and authorized pursuant to this chapter." 2013 Iowa Acts ch. 138, § 63 (to be codified at Iowa Code § 249A.2(7) (Supp. 2013)). The definition no longer makes reference to services *required* under the federal act—instead, the definition more clearly contemplates medical assistance might encompass any services provided in accordance with the federal act, whether mandatory or discretionary. While this new definition provides support for a broad meaning for medical assistance in various instances in the statute including the recovery provision, we focus our inquiry here on the previous version of the statute, as the parties have founded their arguments on the previous version, and the previous version was in effect both when the Medicaid services were provided and the debt was created, and when the department attempted to recover upon Arnold's death.

reading of "all medical assistance" allowing for recovery of costs expended for the provision of *both* mandatory and additional services is consistent with the statutory purpose we have identified here and in our previous cases—namely, broad recovery so as to promote the future provision of services. *See, e.g., Barkema*, 690 N.W.2d at 55; *cf.* Iowa Code § 249A.4(1) (instructing director to "[d]etermine the greatest amount, duration, and scope of assistance which may be provided, and the broadest range of eligible individuals to whom assistance may effectively be provided . . . within the limitations of available funds"). A narrower reading of section 249A.5(2), allowing for recovery of only expenses incurred in providing mandatory services, particularly in cases where substantial additional services have also been provided, could quickly drain the funds of the program and thereby thwart its purpose. Absent some other indication, we do not believe the statute allows the recovery provision to operate in that way.

In determining the phrase "all medical assistance" encompasses additional and discretionary assistance for recovery purposes, we are also guided by the legislature's use of the concepts of "assistance" and "medical assistance" broadly, synonymously, and interchangeably in certain contexts in chapter 249A.[11] We need not catalog all those examples here, but a few are instructive. For example, section 249A.4,

---

[11]We note the general assembly very clearly contrasts "medical assistance" with "additional assistance" and "discretionary assistance" in section 249A.3, in directing the department's provision and allocation of services in accordance with the Federal Social Security Act. *Compare* Iowa Code § 249A.3(1) (directing that "[m]edical assistance shall be provided to" certain enumerated groups in need), *with id.* § 249A.3(3) (allowing the provision of additional medical assistance "within the limits of available funds and in accordance" with section 249A.4(1)). Despite the clear distinction in that context, however, we must also consider the less clearly contoured use of the phrase "medical assistance" in numerous other instances in chapter 249A.

in establishing the duties of the department director, requires the director consider "[t]he level of state and federal appropriations for medical assistance," to determine "the method and level of reimbursement for all medical and health services referred to in section 249A.2, subsection 1 or 7." Iowa Code § 249A.4(9). Because we believe the statute instructs the director to consider appropriations for both "medical assistance" and "additional medical assistance" in determining reimbursement rates for "medical assistance" (in section 249A.2, subsection 7) and "additional medical assistance" (in section 249A.2, subsection 1), we conclude the statute adopts a broader meaning for "medical assistance" in this particular provision. Accordingly, the linking of the phrase "all medical and health services"—and the subsequent specification that it includes both "medical assistance" and "additional medical assistance" as defined in section 249A.2, subsections 1 and 7— with the reference to "medical assistance" in section 249A.4(9)(c) provides further evidence the statute in certain contexts incorporates a broader meaning for "medical assistance" than the meaning set forth in the narrow definition in section 249A.2(7).

We have also observed the apparent interchangeability and broad usage of "assistance" and "medical assistance" in section 249A.3, which establishes Medicaid eligibility standards. *Compare id.* § 249A.3(5) (instructing that "[a]ssistance shall not be granted under this chapter to" certain groups whose income exceeds federally prescribed limitations), *with id.* § 249A.3(6) (instructing that in "determining the eligibility of an individual for medical assistance under this chapter," the department should consider certain resources an individual sold or transferred for the purpose of establishing "eligibility for medical assistance under this

chapter").[12] The general assembly's somewhat indiscriminate use of "assistance" and "medical assistance" is even apparent in the language of the recovery provision itself, as section 249A.5(1)—allowing for recovery of incorrectly paid assistance—uses "medical assistance," and then simply "assistance," in making reference to services provided to a recipient, and in reference to those services for which recovery might be available. *See id.* § 249A.5(1).

Given the purpose of the statute, as identified in our caselaw and in the statute itself, the structure of the statute and its often broad use of the language at issue, and the specific context of the use of this language in the recovery provision, we cannot conclude the phrase "all medical assistance" should be read narrowly in section 249A.5(2) to preclude recovery of expenses incurred for the provision of additional and discretionary medical assistance. We therefore conclude the district court erred in concluding the department's right of recovery established in section 249A.5 was limited to recovery of medical assistance as defined in section 249A.2(7). Instead, we conclude the use of the phrase "all medical assistance" in this context establishes the department's right to recover costs incurred for all medical assistance, including additional medical assistance, and discretionary medical assistance provided to the Melbys during their lifetimes.

2. *The sufficiency of the department's evidence.* In its original ruling declaring the department's right to recover, the district court

_____

[12]The broad language of "under this chapter" in section 249A.3(6) by itself suggests "medical assistance" might encompass additional assistance in this context. *See* Iowa Code § 249A.3(6). That broader reading is bolstered by the unlikelihood the statute requires the department consider certain prior resource transfers in determining an individual's eligibility for mandatory services but refrain from considering those transfers in determining eligibility for additional services.

found the department had incurred expenses for medical assistance for the Melbys "in the amounts claimed" and had "proven the full value of its claims under" the recovery provision. The estate then moved for amendment of that ruling under rule 1.904(2), raising hearsay and foundation objections to certain exhibits admitted at trial, and arguing that if the exhibits were deemed inadmissible, the department had failed to produce sufficient evidence establishing the amounts paid on behalf of the Melbys for medical assistance. The district court enlarged its ruling in response, noting it was overruling the evidentiary objections as it had done at trial and concluding again the exhibits taken together established sufficient evidence of the expenses incurred by the department for provision of medical services to the Melbys. As noted, the estate now argues the district court erred in finding substantial evidence in support of any part of the department's claims. The department maintains it presented the same quantum and quality of evidence it has presented in other Medicaid estate recovery cases. Further, the department argues, the estate apparently does not dispute the amounts expended by the department, as the estate instead focuses on whether the department's evidence adequately identified provision of "medical assistance" as defined in section 249A.2(7).[13]

As we have concluded the district court erred in limiting the department's recovery to the trustors' net income interests and in

---

[13]We note the estate's brief does not precisely state whether its challenge is based on a contention that (1) the department's evidence failed to distinguish between medical assistance it paid as defined in Iowa Code section 249A.2(7) and other medical assistance it paid not fitting within that definition, or (2) the department's evidence failed to establish the department's claimed costs for provision of medical services to the Melbys. Because we have concluded the recovery provision mandates the department's recovery of all medical assistance, including additional and discretionary assistance, we conclude only the second contention is germane to the dispute here.

concluding the department's recovery is limited to the cost of medical assistance as defined in Iowa Code section 249A.2(7), we must reverse and remand this case. Our scope of review of this appeal is at law, dictating that findings of fact regarding the appropriate amount of the recovery here should be made by the district court consistent with this opinion.

### IV. Conclusion.

For the foregoing reasons, we conclude the Melbys had interests in the corpus of their trusts from which the department may recover payments made for the provision of medical assistance on their behalf. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**