**IN THE COURT OF APPEALS OF IOWA**

No. 3-1253 / 13-0888
Filed April 16, 2014

**IN THE INTEREST OF D.S.,**
    **Minor Child,**

**D.S., Minor Child,**
    Appellant.

_____

Appeal from the Iowa District Court for Allamakee County, Alan D. Allbee, Associate Juvenile Judge.

A minor child appeals from delinquency adjudication and disposition orders.  **REVERSED AND REMANDED.**

John Slavik and Thais A. Folta of Elwood, O'Donohoe, Braun & White, L.L.P., Charles City and Cresco, for appellant.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, and Jill Kistler, County Attorney, for appellee.

Heard by Danilson, C.J., and Potterfield and McDonald, JJ.

**MCDONALD, J.**

D.S. appeals from her adjudication as delinquent based on conduct that would constitute harassment under Iowa Code section 708.7(1)(b) (2013) if she were an adult. She contends the State's delinquency petition should have been dismissed because the speech act for which she was adjudicated delinquent was constitutionally protected and because the juvenile court's findings and conclusions were insufficient to find she committed harassment. We reverse the adjudication and remand.

I.

On February 20, 2013, three high school classmates got off a school bus on the way home after school. After exiting the bus, D.S. yelled, "T-Bitch," to get the attention of her friend T.B. The victim in this case, also having the initials T.B., thought D.S. was yelling at her so she turned around and said "what?" to D.S. D.S. replied to the victim, "I wasn't talking to you, you fat, skanky bitch. I'm way better than you and prettier than you, and I'm not desperate like you to sleep with the bus driver." The victim replied, "I don't care about looks, at least I have a heart." D.S. and the victim were approximately ten feet from each other during this exchange. D.S.'s friend than approached D.S. and said, "let's go." The two left the scene and went to D.S.'s house. The victim was hurt by these words and went home and cried, reporting the incident to her mother.

On March 11, the State filed a petition alleging D.S. committed a delinquent act based on violation of Iowa Code sections 708.7(1)(b) and 708.7(4), harassment in the third degree. D.S. filed a motion to dismiss,

contending the theories of harassment alleged in the petition violated her protected speech rights and contending the statute is impermissibly vague. On May 10, the court filed its findings, conclusions, and order (delinquency adjudication). The juvenile court denied the motion to dismiss and found D.S. committed the delinquent act alleged. On May 30, the court filed its disposition order, placing D.S. on probation and ordering community service.

## II.

Review of delinquency proceedings is de novo. *See In re A.K.*, 825 N.W.2d 46, 49 (Iowa 2013). Although we give weight to the factual findings of the juvenile court, especially regarding the credibility of witnesses, we are not bound by them. *See In re J.D.F.*, 553 N.W.2d 585, 587 (Iowa 1996). To the extent the claim involves statutory construction, our review is for correction of errors of law. *See In re N.N.E.* 752 N.W.2d 1, 6 (Iowa 2008); *In re R.E.K.F.*, 698 N.W.2d 147, 149 (Iowa 2005).

## III.

Delinquency proceedings are special proceedings that serve as an alternative to the criminal prosecution of a child. *See In re J.A.L.*, 694 N.W.2d 748, 751 (Iowa 2005). The objective of the proceedings is the best interests of the child. *See id.*; *see also* Iowa Code § 232.1 (stating the chapter on juvenile justice matters shall be liberally construed to provide outcomes that will best serve the child's welfare and the best interest of the state). We presume the child is innocent of the charges, and the State has the burden of proving beyond

a reasonable doubt that the juvenile committed the delinquent act. *See* Iowa Code § 232.47(10).

D.S. contends the court's findings of fact and conclusions of law were insufficient to find the child committed harassment. This claim implicates both the factual findings of the court and the court's construction of the statute. As relevant here, the juvenile court made the following findings of fact:

> [D.S.] and [the victim] have known each other since kindergarten and have lived near each other in [a small town] for that entire time. [D.S.] claims she and [the victim] were friends until they entered the third grade. [The victim] claims a history of ill will between [D.S.] and her. [The victim] claims one physical altercation with [D.S.] that occurred two years ago. [The victim] claims that [D.S.] has frequently made mean and hurtful comments to her.
> . . . [D.S.]'s comments directed toward [the victim] had no legitimate purpose. [D.S.]'s comments were intended to be a "put down" to [the victim]. This "put down" was intended by [D.S.] to make [the victim] lack self-confidence in her relations with the opposite sex and about her body-build. It is not reasonable to believe that [the victim] anticipated any physical harm or threat of physical harm from [D.S.] who is substantially shorter and weighs less than [the victim]. [The victim] testified that she was not threatened by [D.S.] during their encounter on February 20, 2013. [The victim] was not in apprehension of imminent physical harm during this encounter either. [The victim]'s reaction was to return home upset and crying despite her effort to respond to [D.S.]. This incident was the culmination of a number of likely similar incidents. [The victim]'s mother had finally "had enough" and sought assistance from local law enforcement. While schools are required to deal with bullying incidents at school, it is up to local law enforcement and the community to deal with such incidents occurring off school property as occurred here.

With respect to the law, Iowa Code section 708.7(1)(b), provides:

> A person commits harassment when the person, purposefully and *without legitimate purpose*, has personal contact with another person, *with the intent to threaten, intimidate, or alarm* that other person. As used in this section, unless the context otherwise requires, "personal contact" means an encounter in which two or more people are in visual or physical proximity to each other.

"Personal contact" does not require a physical touching or oral communication, although it may include these types of contacts.

(Emphasis added). The statute does not define the terms "threaten, intimidate, or alarm." The juvenile court defined them as follows:

> "Threaten" means "to utter threats against." "Threat" means an expression of an intention to inflict evil, injury, or damage. *Webster's Ninth Collegiate Dictionary* (1998), pages 1228-1229.
> "Intimidate" means "to make timid or fearful." [*Id.*] page 634. "Timid" means "lacking in courage or self-confidence." *Id.* at 1236.
> "Alarm" means "a sudden sharp apprehension and fear resulting from the perception of imminent danger." [*Id.*] page 68.

Applying the facts to the law, the court concluded the "facts found are sufficient to establish that the State did prove beyond a reasonable doubt that the child in interest did commit the delinquent act alleged in the Petition." It is clear from the findings that the court did not reach this conclusion relying on the "threat" or "alarm" alternatives in the harassment statute. The court specifically found there was no threat and there was no apprehension of physical threat or harm. Of necessity, the court must have reached its conclusion that the State proved harassment by relying on the interpretation of "intimidate" as affecting a person's self-confidence and the finding that D.S.'s statements were intended to make the victim "lack self-confidence in her relations with the opposite sex and about her body-build."

We conclude the district court's definition of "intimidate" is erroneous. The juvenile court correctly noted the general principle that we give words used in a statute their ordinary meaning absent any legislative definition. *See State v. White*, 545 N.W.2d 552, 555-56 (Iowa 1996); *see also State v. Romer*, 832 N.W.2d 169, 176 (Iowa 2013). Applying that principle, the juvenile court

concluded that "intimidate means to make timid or fearful" and then bootstrapped the definition of "timid" to conclude that "intimidate" means to make one lack self-confidence. This definition strikes us as not the ordinary meaning of the word "intimidate." The juvenile court cited no case authority in support of this interpretation. We could find none. It seems to us the common meaning of "intimidate" is to "inspire or affect with fear" or to frighten. *See* Webster's Third *New International Dictionary* 1184 (1993) ["Webster's"]; *see also Meuser v. Federal Express Corp.*, 564 F.3d 507, 516 (1st Cir. 2009) (defining "intimidation" as to put another in fear); *State v. Hines*, 471 S.E.2d 109, 114, (N.C. Ct. App. 1996) (defining intimidate as frighten).

In addition to not comporting with the common understanding of the word "intimidate," the juvenile court's interpretation isolates the relevant word and takes it out of its structural and syntactic context. *See In re Estate of Melby*, 841 N.W.2d 867, 879 (Iowa 2014) ("When construing statutes, we assess not just isolated words and phrases, but statutes in their entirety, and we avoid constructions rendering parts of a statute redundant, irrelevant, or absurd."); *Dingman v. City of Council Bluffs*, 90 N.W.2d 742, 749 (Iowa 1958) (stating that error can be committed by trying to define meaning "from an isolated word taken out of context"). First, the charged offense is contained within chapter 708, governing assaults, signaling the charged offense encompasses something more than words or conduct intended to make the victim feel less confident in herself. Second, the juvenile court's interpretation ignores the words immediately surrounding the word "intimidate." *See Peak v. Adams*, 799 N.W.2d 535, 547-48

(Iowa 2011) (providing "the meanings of particular words may be indicated or controlled by associated words"). Within the statutory text, "intimidate" follows the word "threaten" and precedes the word "alarm" in a series of associated words. *See* Iowa Code § 708.7(1)(b). Both "threaten" and "alarm" denote the creation of fear of injury or harm. *See State v. Evans*, 671 N.W.2d 720, 724 (Iowa 2003) (defining alarm "to cause (someone) to feel frightened, disturbed, or in danger"); *see also Meuser*, 564 F.3d at 516 (defining "threat" to mean "to make another fearful or apprehensive of injury or harm"). The canon of construction *noscitur a sociis* provides that associated words in a series should carry the same or similar denotations. Stated differently, the canon provides that "words of a feather flock together." *See Mall Real Estate, L.L.C. v. City of Hamburg*, 818 N.W.2d 190, 202 (Iowa 2012) (citation omitted). Here, the canon compels the conclusion that "intimidate" should be construed similarly to "alarm" and "threaten."

Finally, we typically construe statutes to avoid constitutional infirmity where possible. *See Simmons v. State Pub. Defender*, 791 N.W.2d 69, 88 (Iowa 2010); *see also White*, 545 N.W.2d at 557. The district court's interpretation of the word "intimidate" creates constitutional concerns implicating free speech rights and due process rights regarding vagueness. To avoid potential constitutional infirmity, "[i]ntimidation in the constitutionally proscribable sense of the word is a type of true threat, where the speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Virginia v. Black*, 538 U.S. 343, 360 (2003).

For the foregoing reasons, the district court erred in concluding that "intimidate," as used within Iowa Code section 708.7(1)(b), means to make another feel less confident in her relationships with others and less confident in her body-build. Instead, the common and ordinary meaning of intimidate and the canons of construction dictate the conclusion that "intimidate" means to "inspire or affect with fear" or to "frighten." *See* Webster's at 1184.

In conducting de novo review of the record, we conclude the State failed to prove beyond a reasonable doubt that D.S. committed harassment, properly defined, under any theory of the statute. D.S.'s call for "T-bitch" was not directed to the victim, thereby indicating there was no intent to threaten, alarm, or intimidate the victim. Other testimony showed that D.S. did not intend to alarm, intimidate, or threaten the victim. The testimony showed that D.S. did not, in fact, alarm, intimidate, or threaten the victim. While D.S.'s words may have been childish, rude, and even hurtful, they do not rise to the level of harassment.

Because our resolution of D.S.'s challenge to the sufficiency of the evidence and the juvenile court's interpretation of the statute is dispositive of the appeal, we need not address her constitutional claims. *See In re S.P.*, 672 N.W.2d 842, 846 (Iowa 2003) (declining to address constitutional issues when statutory analysis resolved the appeal). We reverse the juvenile court's adjudication of D.S. as a delinquent and remand for dismissal of the delinquency petition.

**REVERSED AND REMANDED.**