Sherman BRYANT, Appellant,

v.

AMERICAN EXPRESS FINANCIAL ADVISORS, INC., Appellee.

No. 97–557.

Supreme Court of Iowa.

June 3, 1999.

Roger J. Kuhle and John O. Haraldson of Law Office of Roger J. Kuhle, P.C., West Des Moines, for appellant.

John C. Gray of Heidman, Redmond, Fredregill, Patterson, Plaza & Dykstra, L.L.P., Sioux City, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

LARSON, Justice.

Sherman Bryant appeals from a district court order compelling arbitration of his claims against American Express Financial Advisors, Inc. We affirm.

**I. *The Facts.***

Bryant was a sales representative for IDS Financial Services and its successor, American Express Financial Advisors, Inc., until his termination in 1992. When Bryant was first employed by IDS, he signed a financial planner's agreement that did not mention arbitration. As a condition of his employment, in 1977, IDS required Bryant to register with the National Association of Security Dealers, Inc. (NASD). His application stated, in part:

I hereby apply for registration as a registered principal or registered representative of a member of the NATION-AL ASSOCIATION OF SECURITIES DEALERS, INC. in accordance with Articles I and XV of the By–Laws of the Association and attest that I have read the Association's Certificate of Incorporation, By–Laws, Rules of Fair Practice and Code of Procedure for Handling Trade Practice Complaints, and hereby (1) accept and agree to abide by, comply with and adhere to all the provisions, conditions and covenants of the Certificate of Incorporation, the By–Laws, the Rules of Fair Practice and the Code of Procedure for Handling Trade Practice Complaints of the Association, and regulations of the Association as they are, or may from time to time be adopted, changed or amended . . . .

Neither this application nor the NASD certificate that followed referred to arbitration. However, an arbitration provision was part of a separate NASD document, called the NASD Code of Arbitration Procedure, and that provided:

This Code of Arbitration Procedure is prescribed and adopted pursuant to Article VII, Section 1(a)(3) of the By–Laws of the National Association of Securities Dealers, Inc., (the Association) for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company:

(1) between or among members;

(2) between or among members and associated persons. . . .

Following Bryant's termination in 1992, he sued American Express, alleging disability discrimination. Bryant and American Express settled the discrimination claim and executed a mutual release in June 1995. Bryant retained his Career Distributor's Retirement Plan (CDRP) fol-

lowing the suit and settlement. In March 1996 American Express notified Bryant it was reducing his CDRP account because Bryant had competed with American Express following his termination in violation of the CDRP agreement. In June 1996 Bryant sued American Express, alleging conversion of his CDRP account, breach of the settlement agreement, and breach of fiduciary duty. On December 20, 1996, Bryant amended his petition to claim in addition that American Express had retaliated for his filing of the civil rights complaint. On January 7, 1997, American Express moved to compel arbitration. The district court granted the motion to compel and stayed the district court proceedings. We granted Bryant's request for an interlocutory appeal.

Bryant's appeal raises three issues: (1) denial of a constitutional right to a jury trial, (2) the lack of a knowing agreement to arbitrate, and (3) American Express's waiver of its right to arbitrate.

## II. *The Right to Jury Trial.*

Bryant presents the district court's decision as a denial of his constitutional right to a jury trial. However, we view the question as being whether Bryant agreed to arbitrate; if he has, he has no right to a jury trial because a jury trial is obviously not a part of arbitration. The issue of Bryant's right to a jury trial is controlled by his remaining two issues: his lack of a knowing agreement to arbitrate and American Express's alleged waiver of arbitration.

## III. *May the Plaintiff be Required to Arbitrate?*

The issue of requiring Bryant to arbitrate (aside from the waiver issue) involves two subissues: whether he may be held to an arbitration requirement that was not included in his original NASD application and whether a discrimination claimant may be required to arbitrate in any event.

The district court based its decision on a federal arbitration statute, 9 U.S.C. § 2 (FAA), which provides:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

■ A. *Bryant's claim he did not agree to arbitrate.* Clearly, a party cannot be compelled to arbitrate an issue under the FAA without an agreement to arbitrate. Whether an agreement to arbitrate is binding on the parties depends on general principles of contract law. *Bullis v. Bear, Stearns & Co.,* 553 N.W.2d 599, 601–02 (Iowa 1996).

■ When Bryant signed his application to be registered with the National Association of Securities Dealers, he agreed to be bound by the regulations of the association. One of the regulations of the NASD was the Code of Arbitration, quoted above, which clearly required arbitration of disputes. We agree with the district court that Bryant bound himself to the arbitration provision when he signed his NASD application.

■ B. *The claim that discrimination claims are not subject to arbitration under the federal act.* One count of Bryant's amended petition alleges his retirement fund was reduced by American Express in retaliation for Bryant's claim of disability discrimination and implies that the retaliation itself was an act of discrimination. Discrimination claims, Bryant argues, may not be forced into arbitration because "the legislative history of the ADA [Americans with Disabilities Act] would reveal that Congress did not intend to preclude access to a judicial forum by sanctioning voluntary agreements to arbitrate such disputes." The Supreme Court, however, has rejected this argument. In *Gilmer v. In-*

*terstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the Court considered an analogous claim—one under the Age Discrimination in Employment Act (ADEA). The issue in *Gilmer* was whether a person could be subjected to compulsory arbitration pursuant to an arbitration agreement in a securities registration application almost identical to the one at issue here. Gilmer was sixty-two and had worked for the defendant for six years when his employment was terminated in 1987. *Id.* at 23, 111 S.Ct. at 1651, 114 L.Ed.2d at 35. As a condition of his employment, Gilmer had registered as a securities representative with several stock exchanges, including the New York Stock Exchange. The application signed by Gilmer provided that he " 'agree[d] to arbitrate any dispute, claim or controversy' arising between him and Interstate 'that is required to be arbitrated under the rules, constitutions or bylaws of the organization with which I registered.' " *Id.* at 23, 111 S.Ct. at 1650, 114 L.Ed.2d at 35.

Gilmer sued Interstate, alleging he was discharged because of his age in violation of the ADEA, and Interstate sought to compel arbitration pursuant to the agreement in Gilmer's securities registration application and the FAA. *Id.* at 23–24, 111 S.Ct. at 1651, 114 L.Ed.2d at 35. The Court in *Gilmer* observed that an exclusionary clause under the FAA for employment contracts would not apply because the agreement between Gilmer and Interstate regarding arbitration arose out of the securities registration, not an employment contract. *Id.* at 25 n. 2, 111 S.Ct. at 1652 n. 2, 114 L.Ed.2d at 36 n. 2.

*Gilmer* involved a claim for age discrimination, rather than disability discrimination, as in the present case. Nevertheless, we believe *Gilmer* is controlling on the issue of the scope of the FAA. First, *Gilmer* held that the exclusion in the FAA for employment contracts was not applicable because, as here, the arbitration agreement was in the application for registra-

tion not in the employment contract itself. In addition, *Gilmer* noted the

> purpose [of the FAA] was to reverse the long standing judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.

*Gilmer,* 500 U.S. at 24, 111 S.Ct. at 1651, 114 L.Ed.2d at 36. The provisions of the FAA, moreover, "manifest a 'liberal federal policy favoring arbitration agreements.' " *Id.* at 25, 111 S.Ct. at 1651, 114 L.Ed.2d at 36 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785 (1983)).

*Gilmer* noted that statutory claims, such as Bryant's (based on a disability discrimination statute), "clear[ly] ... may be the subject of an arbitration agreement, enforceable pursuant to the FAA." 500 U.S. at 26, 111 S.Ct. at 1652, 114 L.Ed.2d at 37. In fact, the Court noted a wide variety of statutory claims have been held subject to arbitration under the FAA. These statutes include the Sherman Act, the Securities Exchange Act of 1934, civil proceedings under the RICO Act, and the Securities Act of 1933. *Id.* In these cases, " 'a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.' " *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444, 456 (1985)). Further, the societal interests underlying the civil rights laws, and the fairness of the enforcement procedures, were preserved in the arbitration process under the FAA. *Gilmer,* 500 U.S. at 27–33, 111 S.Ct. at 1652–55, 114 L.Ed.2d at 37–41.

Federal circuit courts of appeal have applied *Gilmer* to various categories of civil rights claims. *See Patterson v. Tenet Healthcare, Inc.,* 113 F.3d 832, 838 (8th Cir.1997) (employee who signed arbitration clause in employee handbook required to

arbitrate Title VII claim under *Gilmer*); *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1467 (D.C.Cir.1997) (interpreting FAA section 1 exclusion for employer/employee claims narrowly and holding employment contract requiring employees to sign agreement to arbitrate was valid; employee required to arbitrate Title VII claims); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1487–88 (10th Cir.1994) (holding *Gilmer* required employee's Title VII claim to be arbitrated when employee signed securities registration form, which required disputes to be arbitrated); *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 700 (11th Cir.1992) (holding employee who brought sexual harassment claim against employer and who agreed to arbitrate disputes in her NASD registration as a stockbroker was bound to arbitrate under FAA and *Gilmer;* no significant distinction between ADEA, as in *Gilmer,* and the civil rights provisions of Title VII); *Mago v. Shearson Lehman Hutton Inc.*, 956 F.2d 932, 935 (9th Cir.1992) (holding under *Gilmer* that employee did not meet burden of showing Congress intended to preclude arbitration of claim under Title VII); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 312 (6th Cir.1991) (holding *Gilmer* required employee's Title VII claim to be arbitrated, given employee signed securities registration form as condition of employment); *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir.1991) (on remand from Supreme Court in light of *Gilmer,* court held it would compel arbitration under FAA of stockbroker's Title VII claim against employer when employee agreed to arbitrate disputes by signing securities registration form); *see also Johnson v. Piper Jaffray, Inc.*, 530 N.W.2d 790, 801 (Minn.1995) (employee who signed NASD arbitration agreement as a condition of employment was required to arbitration Title VII claims pursuant to *Gilmer*).

Other circuits, however, have taken a more restrictive view of arbitration in civil rights cases. *See, e.g., Gibson v. Neigh-*

*borhood Health Clinics, Inc.*, 121 F.3d 1126, 1132 (7th Cir.1997) (holding employee who signed arbitration agreement but did not do so as bargained-for consideration and did not have opportunity to read arbitration agreement was not bound to arbitrate Title VII and ADA claims against employer); *Renteria v. Prudential Ins. Co. of America,* 113 F.3d 1104, 1108 (9th Cir.1997) (employee who was required to sign arbitration agreement as condition of employment was not bound to arbitrate Title VII claim because arbitration agreement did not describe the disputes subject to arbitration; thus no knowing agreement to arbitrate); *Nelson v. Cyprus Bagdad Copper Corp.,* 119 F.3d 756, 762 (9th Cir. 1997) (holding employee did not knowingly agree to arbitrate ADA claim by signing form acknowledging receipt of employee handbook including arbitration provisions); *Prudential Ins. Co. of America v. Lai,* 42 F.3d 1299, 1305 (9th Cir.1994) (same).

 Bryant relies on the seventh and ninth circuit cases to support his argument that he did not knowingly agree to arbitrate his claims because the arbitration provision was not found in the document he signed. American Express responds that Bryant was not prevented from reading the NASD Code of Arbitration, which was incorporated into his application. He simply chose not to. An agreement to arbitrate is to be treated like any other contract, *Gilmer,* 500 U.S. at 24, 111 S.Ct. at 1651, 114 L.Ed.2d at 36, and a failure to fully read and consider the contract cannot relieve him of its provisions. This rule applies to contracts, such as the present one, that incorporate documents by reference.

Failure to read a contract before signing it will not, as a rule, affect its binding force. Indeed, the courts appear to be unanimous in holding that a person who, having the capacity and an opportunity to read a contract, is not misled as to its contents and who sustains no confidential relationship to the other party cannot avoid the contract on the ground of mistake if he signs it without

reading it, at least in the absence of special circumstances excusing his failure to read it. *This rule has been carried to the extent of holding that in the absence of fraud or circumstances savoring of fraud, one entering into a contract which refers for some of its terms to an extraneous document, outside the contract paper, is bound also thereby, even though he omits to inform himself as to the contents of that document or the nature of those terms and conditions when it is possible for him to do so.*

17A Am.Jur.2d *Contracts* § 225, at 229–30 (1991) (emphasis added) (footnotes omitted).

We conclude that Bryant's application form, which incorporated by reference the requirement for arbitration, was binding on him, and the court correctly held that his Title VII claim was properly to be subjected to arbitration.

### IV. *The Waiver Argument.*

■ Bryant contends that, even if this dispute is properly under the FAA, American Express waived its right to assert its right to arbitrate. Bryant's original petition was filed on June 20, 1996, and his amended petition was filed on December 20, 1996. American Express filed its motion to compel arbitration on January 7, 1997. Bryant argues that this was too late. American Express contends it raised arbitration in a reasonable time, and in any event, Bryant was not prejudiced by the timing.

With regard to waiver, we have observed:

"An arbitration agreement may be waived. There is an overriding policy favoring arbitration, and the waiver of that right is not to be lightly inferred. The mere delay in seeking a stay of litigation with some resultant prejudice to a party cannot be deemed a waiver. The essential test for waiver of arbitration requires conduct or activity inconsistent with the right to arbitration *and* prejudice to the party claiming waiver.

The issue of whether one has waived his right to arbitrate turns on the significance of the action taken in a judicial forum. The issue is one for the court to decide. Delay and the extent of the moving party's trial-oriented activity are material factors in assessing a claim of prejudice. Prejudice may result from lost evidence, duplication of efforts, or the use of discovery methods unavailable in arbitration."

*Modern Piping v. Blackhawk Auto. Sprinklers,* 581 N.W.2d 616, 620 (Iowa 1998) (quoting *Tjeerdsma v. Global Steel Bldgs., Inc.,* 466 N.W.2d 643, 645 (S.D.1991) (citations omitted)). In *Modern Piping* we held the plaintiff, who had moved to compel arbitration five days before trial and eighteen months after the plaintiff filed its original petition, waived its right to arbitrate. *Modern Piping,* 581 N.W.2d at 621. In *Des Moines Asphalt & Paving Co. v. Colcon Industries Corp.,* 500 N.W.2d 70, 73 (Iowa 1993), we held that a two-month period of time between the filing of the petition to foreclose and the date of filing a motion to compel arbitration did not waive the right to arbitration.

■ Whether a waiver has occurred is generally a fact issue. *Wesley Retirement Servs., Inc. v. Hansen Lind Meyer, Inc.,* 594 N.W.2d 22, 30 (Iowa 1999) (approximately eight months between filing a petition and motion to arbitrate; held finding of no waiver supported by substantial evidence). In this case, although Bryant had conducted some discovery prior to the motion to compel, the court found he was not prejudiced. There is substantial support for that finding; presumably, the discovery efforts would not be wasted but would simply be used in the arbitration proceeding rather than in a judicial proceeding.

We believe the court properly found no waiver of American Express's right to arbitrate.

**AFFIRMED.**