# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 21-2816

———————————————

Sanborn Savings Bank

*Plaintiff - Appellee*

v.

Connie R. Freed

*Defendant - Appellant*

———————————

Appeal from United States District Court
for the Northern District of Iowa - Western

———————————

Submitted: March 15, 2022
Filed: June 24, 2022

———————————

Before GRUENDER, BENTON, and ERICKSON, Circuit Judges.

———————————

ERICKSON, Circuit Judge.

Connie Freed seeks to retain the proceeds from the sale of a condominium despite her ex-husband's bankruptcy and an outstanding balance owed to Sanborn Savings Bank on a business loan. The trial court[1] found Sanborn Savings Bank was

———————————————————————

[1]The Honorable Mark A. Roberts, United States Magistrate Judge for the Northern District of Iowa, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

entitled to the proceeds. We have jurisdiction pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1291, and we affirm.

## I.     BACKGROUND

Connie Freed ("Connie") and her then-husband, Dean Freed ("Dean"), purchased a condominium in Sioux Falls, South Dakota for $525,000. At the time of the purchase, they intended to make the condo their primary residence. To finance the couple's purchase, on September 15, 2014, Dean executed a consumer loan note for $384,777.13 (the "Original Note") from Sanborn Savings Bank ("Sanborn"). Connie consented to Dean's execution of the Original Note, but she was not a signatory. The same day, Connie and Dean jointly granted Sanborn a mortgage on the condominium to secure the Original Note (the "Mortgage"). Both Dean and Connie initialed the pages of the Mortgage and signed the final page.

The Mortgage included three key provisions: (1) a choice-of-law provision specifying that the Mortgage was governed by Iowa law; (2) a homestead waiver, in which Connie and Dean "waive[d] all appraisement and homestead exemption rights relating to" the condominium, except as prohibited by law; and (3) a future advances clause or "dragnet clause." See Decorah State Bank v. Zidlicky, 426 N.W.2d 388, 390 (Iowa 1988) (recognizing a future advances clause is also called a dragnet clause). The future advances clause and related clauses granted Sanborn a security interest in the Mortgage covering future funds Dean might borrow:

> **SECURED DEBTS AND FUTURE ADVANCES.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:
>
> **A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, dated September 15, 2014, from DEAN E. FREED (Borrower) to [Sanborn], with a loan amount of $384,777.13.

-2-

**B. Future Advances**. All future advances from [Sanborn] to DEAN E. FREED under the Specific Debts executed by DEAN E. FREED in favor of [Sanborn] after this Security Instrument. If more than one person signs this Security Instrument, each agrees that this Security Instrument will secure all future advances that are given to DEAN E. FREED either individually or with others who may not sign this Security Instrument. All future advances are secured by this Security Instrument even though all or part may not yet be advanced. All future advances are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future advances in any amount. Any such commitment must be agreed to in a separate writing. In the event that [Sanborn] fails to provide any required notice of the right of recission, [Sanborn] waives any subsequent security interest in the Mortgagor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any other debt if [Sanborn] fails, with respect to that other debt, to fulfill any necessary requirements or conform to any limitations of Regulations Z and X that are required for loans secured by the [condominium].

**C. All Debts.** All present and future debts from DEAN E. FREED to [Sanborn], even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. . . .

Approximately four years later, Dean borrowed $693,986.82 from Sanborn under three notes to keep his business running (the "Business Notes"). Connie was not a party to the Business Notes. A few months after taking out the Business Notes, Dean filed a petition for relief under Chapter 7 of the Bankruptcy Code. Connie did not declare bankruptcy. Around this same time, the condominium was sold for $650,000, the couple initiated divorce proceedings, and Connie moved to a different state.

After the condominium was sold and related expenses were paid (including the Original Note), $249,117.65 of the sale proceeds were deposited in escrow. In

the bankruptcy proceedings, Dean argued that his half of the sale proceeds was exempt from paying down his Business Notes because the condominium was a homestead, notwithstanding the Mortgage's future advances clause, homestead waiver, or other provisions. Dean also waived his right to discharge the Business Notes in bankruptcy. Sanborn resisted Dean's claim that the sale proceeds were exempt. The bankruptcy court concluded Dean's portion of the escrowed sale proceeds must pay down his Business Notes pursuant to the Mortgage's future advances clause and that Dean could not claim a homestead exemption for those proceeds.[2]

Sanborn then commenced an action in diversity against Connie in the United States District Court for the Northern District of Iowa, seeking a declaratory judgment that (1) Connie's portion of the escrowed sale proceeds was subject to the Mortgage's future advances clause, and (2) Sanborn could apply the proceeds to Dean's Business Notes. Sanborn successfully moved for summary judgment, and Connie appeals. Connie requests that we certify several questions to the Iowa Supreme Court. In her reply brief, Connie raised a new argument and Sanborn has filed a motion to strike it. We deny both motions and affirm.

## II. DISCUSSION

Connie raises a number of issues on appeal, each of which attacks the district court's finding that Sanborn is entitled to the escrowed condominium sale proceeds under the terms of the Mortgage's future advances clause and Dean's Business Notes. We "review *de novo* the district court's grant of summary judgment," Hallmark Specialty Ins. v. Phoenix C & D Recycling, Inc., 999 F.3d 563, 567 (8th Cir. 2021) (quoting Van Dorn v. Hunter, 919 F.3d 541, 544 (8th Cir. 2019)), viewing the "record in the light most favorable to the nonmoving party and draw[ing] all reasonable inferences in that party's favor," Kohlbeck v. Wyndham Vacation

---

[2] In re Freed, Bankr. No. 18-01211, slip op. at 1, 6, 2020 WL 1987805 (Bankr. N.D. Iowa Apr. 24, 2020).

Resorts, Inc., 7 F.4th 729, 737 (8th Cir. 2021) (quoting Richardson v. Omaha Sch. Dist., 957 F.3d 869, 876 (8th Cir. 2020)).  We will affirm only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

We apply state substantive law in diversity actions.  See Martin v. Wal-Mart Stores, Inc., 183 F.3d 770, 772 (8th Cir. 1999).  The parties agree the Mortgage is governed by Iowa law.

### 1.     The Future Advances Clause Encompasses the Business Notes

Connie contends the district court erred when it found the Mortgage's future advances clause secures the Business Notes.  While Iowa recognizes the validity of future advances clauses, it does so with a "definite lack of enthusiasm."  Zidlicky, 426 N.W.2d at 390; see Blue Grass Sav. Bank v. Cmty. Bank & Tr. Co., 941 N.W.2d 20, 25 (Iowa 2020) (noting that even if disfavored, mortgages with dragnet clauses are enforceable).  "Iowa courts have enforced future advances mortgage clauses against joint mortgagors for the individual, secret debts of a mortgagor."  Poweshiek Cnty. Sav. Bank v. Hendrickson, 699 N.W.2d 684, 2005 WL 1224745, at *3 (Iowa Ct. App. May 25, 2005) (unpublished table decision) (citing Corn Belt Sav. Bank v. Kriz, 219 N.W. 503, 504 (Iowa 1928)).  When determining whether a future advances clause encompasses a particular debt, Iowa courts apply the following standard:

> In the absence of clear, supportive evidence of a contrary intention, a mortgage containing a dragnet type clause will not be extended to cover future advances unless the advances are of the same kind and quality or relate to the same transaction or series of transactions as the principal obligation secured or unless the document evidencing the subsequent advance refers to the mortgage as providing security therefor.

Freese Leasing, Inc. v. Union Tr. & Sav. Bank, 253 N.W.2d 921, 927 (Iowa 1977) (cleaned up).

Connie notes the Business Notes are of a "completely different character" than the Original Note, which was a purchase-finance note for the condominium. Under Iowa law, the distinct nature of the debt is material only when there is no "clear, supportive evidence of a contrary intention" that the mortgage may secure other, unrelated debt. Id. (citation omitted). Here, the Mortgage makes plain that it may secure "[a]ll present and future debts from [Dean] to [Sanborn]," regardless of whether the Mortgage is mentioned in the future debt instrument, the "future debt is unrelated to or of a different type than this debt," or if Dean "incur[s] [debts] either individually or with others who may not sign this [Mortgage]." The clause is both broad in scope and conspicuously printed in bold under the header "**SECURED DEBTS AND FUTURE ADVANCES**" on the second page of the Mortgage. See Wells Fargo Bank, N.A. v. Valley Bank & Tr., 839 N.W.2d 675, 2013 WL 4767889, at *2 (Iowa Ct. App. Sept. 5, 2013) (unpublished table decision) (concluding the parties intended the future advances clause to cover the notes when, in part, the clause was written broadly and had an obvious presence). Given the clause's unambiguous language, its bold presence, and Connie's initials on the page containing the clause as well as her signature at the end of the document, the indisputable evidence demonstrates that the Mortgage secured the Business Notes.

## 2.      Other Arguments

### A.      Contract Formation

Connie asserts various contractual formation problems render portions of the Mortgage unenforceable. For instance, she claims there was no "meeting of the minds" because she did not understand or discuss the future advances provision prior to signing the contract. Iowa law makes plain that a party's failure to read fully and consider the terms of a contract is not a permissible defense to enforcement. Bryant v. Am. Express Fin. Advisors, Inc., 595 N.W.2d 482, 486 (Iowa 1999). Iowa courts have recognized and enforced similar future advances clauses, see, e.g., Kriz, 219 N.W. at 504, 506; Libertyville Sav. Bank v. McKee, 820 N.W.2d 159, 2012 WL

2411187, at \*6–7 (Iowa Ct. App. June 27, 2012) (unpublished table decision); Hendrickson, 2005 WL 1224745, at \*1, \*3–4.

When, as is this case here, there is no evidence of duress, incapacity, coercion, or other formation problems, and the party accepted the terms by signing the contract, as Connie did here, she is bound by the terms of the contract. See Gosiger, 823 F.3d at 502 (noting contracting parties are bound to the terms of the contract if there is offer and acceptance that conforms to the offer's terms).

### B. *Meaning of Signature*

While Connie contends her initials and signature on the Mortgage do not equate to her agreeing to be bound by the Mortgage's terms and implications, she has not presented any evidence of fraud, coercion, or other circumstance that might call into question her execution of the Mortgage. See Bryant, 595 N.W.2d at 487 (noting that unless there is "fraud or circumstances savoring of fraud," a contracting party is bound by the terms in the contract).

### C. *The Maximum Obligations Clause*

Connie argues for the first time on appeal that Sanborn failed to make a prima facie case that it was entitled to the condominium sale proceeds because it did not prove the proceeds comported with the Mortgage's Maximum Obligation Limit clause (the "MAX Clause"). The MAX Clause ensures that Sanborn cannot claim the Mortgage secures the principal amount of its loans to Connie and Dean at any one time beyond the value of the Original Note ($384,777.13). Connie waived this argument because she failed to raise it below, and we find no miscarriage of justice in declining to analyze her claim. See Oglesby v. Lesan, 929 F.3d 526, 534 (8th Cir. 2019) (quoting Cole v. UAW, 533 F.3d 932, 936 (8th Cir. 2008)).[3]

---

[3]The bankruptcy court addressed this issue with respect to Dean's portions of the condominium sale proceeds and the MAX Clause, finding Sanborn was entitled to the funds. In re Freed, 2020 WL 1987805, at \*5–6.

## D.     Public Policy

Connie contends the Mortgage forces her to waive her homestead rights in contravention of public policy, which is codified in the unfair credit practices regulations at 16 C.F.R. § 444.2.  Section 444.2 is a Federal Trade Commission ("FTC") regulation that, by its terms, does not apply to "banks."  See 15 U.S.C. § 45(a)(2) (exempting banks, savings, and loan institutions, as defined in 15 U.S.C. § 57a(f), from regulation by the FTC with limited exceptions).  Since Sanborn is indisputably a bank, the regulation she relies on is inapplicable and cannot void her obligations under the Mortgage.

## E.     Unconscionability

Future advances clauses in mortgages are contracts of adhesion under Iowa law.  See Nat'l Loan Invs., L.P. v. Martin, 488 N.W.2d 163, 166 (Iowa 1992).  But in order "to complete the case for unconscionability," Iowa law requires more than adhesion.  Home Fed. Sav. & Loan Ass'n of Algona v. Campney, 357 N.W.2d 613, 619 (Iowa 1984).  A contract or one of its clauses is unconscionable if, at the time the parties entered into the agreement, it is a contract that "no person in his or her senses and not under delusion would make on the one hand, and no honest and fair person would accept on the other."  R & J Enterprizes v. Gen. Cas. Co. of Wis., 627 F.3d 723, 729 (8th Cir. 2010) (quoting Campney, 357 N.W.2d at 619–20).  In this analysis, the court examines factors of "assent, unfair surprise, notice, disparity of bargaining power, and substantive unfairness."  Bartlett Grain Co., LP v. Sheeder, 829 N.W.2d 18, 27 (Iowa 2013) (quoting C & J Vantage Leasing Co., 795 N.W.2d at 80).  "[T]he doctrine of unconscionability does not exist to rescue parties from bad bargains."  C & J Vantage Leasing Co., 795 N.W.2d at 80.

Connie's claim is essentially that the Mortgage was a bad bargain.  She cannot meet the standard for establishing unconscionability under Iowa law.

### F.     Disclosure Required by Iowa Code § 535.17(3)

On appeal, Connie raises for the first time an argument that the Mortgage is not a credit agreement because it did not contain the disclosure required by § 535.17(3).  By not raising this argument below, Connie has waived it.  See Ridenour v. Boehringer Ingelheim Pharms., Inc., 679 F.3d 1062, 1067 (8th Cir. 2012).  Even if it had been properly raised, the argument is without merit.  Section 535.17(3) mandates that a credit agreement include "in boldface, ten point type" a notice that complies with the following language:

> IMPORTANT: READ BEFORE SIGNING. The terms of this agreement should be read carefully because only those terms in writing are enforceable. No other terms or oral promises not contained in this written contract may be legally enforced. You may change the terms of this agreement only by another written agreement.

Iowa Code § 535.17(3).  Even if the language is not included in the Mortgage, Iowa law allows the notice to be "included on a separate form or together with other disclosures that are provided when the agreement is made, or can be given wholly apart from the agreement and at any time after the agreement has been made." Id. § 535.17(2).  It is indisputable that the required notice was included with other disclosures provided to Connie.

### G.     Equitable Arguments

Connie's equitable arguments are foreclosed by Iowa law because the Mortgage is a "credit agreement" under Iowa Code § 535.17(5)(c).

A "credit agreement" is "any contract made or acquired by a lender to loan money, finance any transaction, or otherwise extend credit for any purpose, and includes all of the terms of the contract," subject to certain exclusions inapplicable here.  Id.  Connie contends a mortgage is not a "credit agreement" for purposes of the statute of frauds, relying on (1) the failure of § 535.17 to specifically mention or

-9-

define "mortgage," and (2) the lack of a specific case that defines a mortgage as a "credit agreement." Contrary to Connie's assertions, a mortgage must necessarily be a "credit agreement" under Iowa Code § 535.17(5)(c). A mortgage is a "an interest in land created by a written instrument providing security for the performance of a duty or the payment of a debt." Mortgage, Black's Law Dictionary (6th ed. 1990). A mortgage fits precisely within Iowa's definition of a "credit agreement." It is a contract whereby a lender acquires a security interest in property to lend money, finance the transaction, or otherwise extend credit. See Iowa Code § 535.17(5)(c). Nothing in Iowa law requires the use of the term "extend[ing] money" to be a "credit agreement," as Connie argues. See id.

Because the Mortgage is a credit agreement, Connie's equitable arguments are untenable. See id. § 535.17(7) ("This section entirely displaces principles of common law and equity that would make or recognize exceptions to or otherwise limit or dilute the force and effect of its provisions concerning the enforcement in contract law of credit agreements or modifications of credit agreements.").

### H. Remaining Arguments

Connie's remaining arguments are wholly devoid of merit and/or frivolous.

## III. CONCLUSION

We affirm the judgment of the district court. We deny Connie's motion to certify questions to the Iowa Supreme Court and we also deny Sanborn's motion to strike a portion of Connie's reply brief as moot.

_____