# In the Iowa Supreme Court

---

No. 22–1865

Submitted March 27, 2025—Filed May 9, 2025

---

**County Bank,**

Appellee,

vs.

**Clinton Allan Shalla** and **Michelle Lynn Shalla,**

Appellants.

---

**Clinton Allan Shalla** and **Michelle Lynn Shalla,**

Third-Party-Plaintiff Appellants,

vs.

**Chris Goerdt** and **Peoples Trust and Savings Bank,**

Third-Party-Defendant Appellees.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Washington County, Michael J. Schilling (summary judgment and discovery) and Shawn Showers (directed verdict and new trial), judges.

Appellants contend the district court erred in dismissing their claims for negligence and fraudulent misrepresentation as barred by Iowa Code section 535.17. **Decision of Court of Appeals and District Court Judgment Affirmed and Case Remanded.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Peter C. Riley (argued) of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellants.

John C. Wagner (argued) of John C. Wagner Law Offices, P.C., Amana, for appellee.

Theodore T. Appel (argued), Kevin C. Rigdon, and Ryan S. Fisher (until withdrawal) of Bradley & Riley PC, Cedar Rapids, for third-party-defendant appellee Chris Goerdt.

Ann C. Gronlund (argued), Matthew L. Preston, Brad J. Brady, and Jared T. Favero of Brady Preston Gronlund PC, Cedar Rapids, for third-party-defendant appellee Peoples Trust and Savings Bank.

**McDonald, Justice.**

The Iowa credit agreement statute of frauds provides that a "credit agreement," including all terms of that agreement, "is not enforceable in contract law by way of action or defense by any party unless a writing exists which contains all of the material terms of the agreement." Iowa Code § 535.17(1), (5)(*c*) (2018). The statutory prohibition against actions to enforce unwritten credit agreements and unwritten terms of credit agreements includes any action, petition, counterclaim, or crossclaim "to enforce affirmatively any right or duty or to recover damages for the nonperformance of any duty." *Id.* § 535.17(5)(*a*). The statute is broad in its scope and directs that it "displaces principles of common law and equity that would . . . limit or dilute the force and effect" of the statute. *Id.* § 535.17(7). The question presented on further review is whether this statute bars a party from asserting causes of action for negligence and fraudulent misrepresentation to enforce unwritten terms of an unwritten credit agreement to obtain financing to exercise an option to purchase real property. The district court and the court of appeals concluded the answer to that question was yes. For the reasons stated below, we affirm.

I.

In February 2014, a lender foreclosed a mortgage on Clint Shalla's farm. To prevent a sheriff's sale, Clint entered into a written debt settlement agreement with Greg and Heather Koch. Clint read the debt settlement agreement prior to signing it. Under the terms of the agreement, the Kochs agreed to purchase the farm property for approximately $497,000 and receive a deed in lieu of foreclosure. They agreed to give Clint an exclusive option to repurchase the property for the same price plus fees and interest. Clint had the right to exercise the option by providing written notice, accompanied by an irrevocable financing

commitment, by August 15, 2015. The failure to timely exercise the exclusive option rendered the option null and void. Clint's wife, Michelle Shalla, did not hold any title in the farm, and she was not a party to the debt settlement agreement. However, Michelle executed the deed in lieu of foreclosure and conveyed her marital interest in the property to the Kochs.

After entering into the debt settlement agreement, the Shallas began to search for financing to exercise the option. Clint began communicating with Christopher Goerdt, who was then serving as the president of Peoples Trust and Savings Bank (Peoples Bank). Clint claimed he first contacted Goerdt early in the spring of 2015 to secure financing to exercise the option to repurchase the farm. Goerdt disputed the timeline. He claimed Clint first contacted him around August 2015. The only documentation of any communication between the Shallas and Goerdt occurred after August 15. Setting aside the timing of the communications, the record shows Goerdt orally agreed to "tak[e] care of the buyback of the property" and secure financing for the Shallas to exercise the option.

August 15 came and went, and Clint failed to exercise the option to repurchase the farm. In his deposition, Clint testified that he was unaware of the August 15 deadline, that he had no conversations with Goerdt regarding the option deadline prior to its passing on August 15, and that he first learned about the deadline when Goerdt informed him in early October. Clint's recollection of the timeline of these events was consistent with Goerdt's. Goerdt testified that his first dealing with the Kochs occurred in October. He claims Greg Koch provided him with a copy of the debt settlement agreement. When Goerdt reviewed the debt settlement agreement, he learned of the August 15 option

deadline for the first time. Goerdt immediately told Clint about the option deadline and told him that the option had expired.

After the option expired, the Shallas contacted the Kochs to see if they could still repurchase the farm. The Kochs agreed to sell the farm but believed the price was now negotiable. In early December, the Shallas agreed to repurchase the property from the Kochs for approximately $1.25 million.

In late December, Goerdt's employment with Peoples Bank ended, and he began employment with County Bank on January 18, 2016. On January 25, Goerdt secured financing through County Bank for the Shallas to complete the renegotiated transaction with the Kochs. The Shallas did not want to attend the closing with the Kochs, so Goerdt agreed to handle it for them. Goerdt came to the Shallas' home and presented them with the paperwork. The Shallas signed a note to borrow $1.3 million from County Bank secured by mortgages on the farm. Goerdt brought with him a cashier's check issued by County Bank for $30,405.80, payable to Peoples Bank. Goerdt instructed Clint to take the check to a specific teller at Peoples Bank and obtain $25,000 in cash for miscellaneous closing costs. Clint claims that Goerdt instructed him to deliver the $25,000 to Goerdt in the parking lot of a Subway restaurant, which Clint claims he did.

Goerdt's unusual directions with respect to the cashier's check and the delivery of cash foreshadowed things to come. Shortly thereafter, County Bank suspended Goerdt and then terminated his employment after County Bank learned from another customer that Goerdt was engaged in fraudulent activities. In May 2019, Goerdt was indicted on eleven counts of bank fraud, two counts of aggravated identity theft, two counts of wire fraud, and one count of misapplication by a bank officer. He later pleaded guilty to fifteen of these charges and was sentenced to federal prison. One of the charges Goerdt pleaded

guilty to was an unauthorized withdrawal of $2,218 from the Shallas' bank account.

In the interim, the Shallas made only one payment on the mortgage, and County Bank filed this foreclosure petition. The Shallas asserted counterclaims against County Bank for (1) fraudulent misrepresentation and nondisclosure and (2) conversion. In addition to the counterclaims against County Bank, the Shallas asserted third-party claims against Peoples Bank and Goerdt for (1) "cross petition liability," (2) negligence, (3) fraudulent misrepresentation, (4) conversion, and (5) aiding and abetting. The negligence and fraudulent misrepresentation claims arose out of Goerdt's alleged oral agreement to obtain financing for and assist the Shallas in exercising the option under the debt settlement agreement.[1] According to the Shallas, Peoples Bank and Goerdt failed to adequately represent the Shallas' interests with respect to the option.

Peoples Bank filed a motion for partial summary judgment. As relevant here, Peoples Bank argued the negligence and fraudulent misrepresentation claims arising out of the agreement to obtain financing were barred by Iowa Code section 535.17, the credit agreement statute of frauds. Peoples Bank also believed it was entitled to judgment as a matter of law for the fraudulent misrepresentation claim because Goerdt, as Peoples Bank's former president, never discussed the Koch option with the Shallas prior to the option deadline. Further, Peoples Bank claimed Michelle's negligence and fraudulent misrepresentation claims should be dismissed because she was not a party to

---

[1]The Shallas also alleged that Goerdt misrepresented that the Shallas should withdraw $12,000.00 from their account and provide it to Goerdt so that Goerdt could pay the Shallas' accountant and implement dealership. This claim is not relevant to the resolution of the issue presented in this appeal.

the debt settlement agreement. Goerdt joined Peoples Bank's motion for summary judgment with respect to these claims.

While the motions for summary judgment were pending, the district court, at the parties' request, suspended proceedings for almost two years due to Goerdt's criminal prosecution. The parties wanted to depose Goerdt before proceeding, but Goerdt refused to be deposed until after his criminal case was resolved. After Goerdt was sentenced in the criminal case, this case resumed, and the Shallas filed their resistance to the motions for summary judgment. The Shallas argued the credit agreement statute of frauds did not bar their claims because the statute applied only to contract claims and not tort claims. They also argued that Michelle had standing to bring these claims because the property at issue was a marital asset and that the factual arguments relied upon by the third-party defendants were improper. Additionally, the Shallas claimed Peoples Bank was vicariously liable for Goerdt's conduct.

The district court granted in part and denied in part the motions for partial summary judgment. The court granted the motion with respect to Michelle's claim for fraudulent misrepresentation because she was not a party to the debt settlement agreement that contained the exclusive option. On the other claims, the district court held that section 535.17 did not apply and that there were disputed issues of material fact to be resolved at trial.

Peoples Bank filed a motion to reconsider, arguing the court erred in its interpretation and application of Iowa Code section 535.17. Specifically, Peoples Bank believed that because Goerdt's alleged oral promises were made in connection with a promise to loan money, they were barred by the credit agreement statute of frauds. The district court granted the motion to reconsider. It determined that, after additional research, the Shallas allegations were

premised upon oral promises by Goerdt made in connection with a credit agreement. This made the promises unenforceable under the credit agreement statute of frauds. The court then held that tort claims based upon oral agreements made in connection with a credit agreement are barred by section 535.17.

The remainder of the case came on for trial. The final pretrial conference was held in September 2022. At this time, the Shallas and Peoples Bank agreed to sever their claims and enter a joint stipulation regarding issue and claim preclusion in future proceedings between the parties. The court agreed to the severance. County Bank's foreclosure action against the Shallas was tried to the court. The court entered judgment in favor of County Bank and against the Shallas for $2,398,069.20 for the unpaid loans, interest, and attorney fees and foreclosed the property.

The Shallas' counterclaims against County Bank and the Shallas' third-party claims against Goerdt were tried to a jury. At the close of the Shallas' case, Goerdt moved for a directed verdict on the negligence and fraudulent misrepresentation claims related to the agreement to obtain financing for the exercise of the option. Like Peoples Bank, he argued the claims were barred by Iowa Code section 535.17. The district court granted the motion and submitted the parties' remaining claims to the jury. The jury found Goerdt committed conversion by misappropriating $5,800 from the Shallas.

The Shallas timely filed their appeal from the district court's judgment, and we transferred this case to the court of appeals. The Shallas raised several arguments on appeal. The court of appeals rejected each and affirmed the judgment of the district court. The court of appeals decision was unanimous on all issues except the application of the statute of frauds to the Shallas' claims for

negligence and fraudulent misrepresentation. The majority held section 535.17 prevented the Shallas from raising in tort what they could not raise in contract: the breach of an unwritten credit agreement. A dissenting judge believed the district court erred in dismissing the Shallas' negligence and fraudulent misrepresentation claims because section 535.17 applies only to claims in contract and not in tort.

We granted the Shallas' application for further review. "When we grant further review, we have discretion to let the court of appeals decision stand on specific issues." *State v. Wade*, 7 N.W.3d 511, 514 (Iowa 2024). We exercise that discretion here, and we address only the issue of whether the district court erred in holding that Iowa Code section 535.17, the credit agreement statute of frauds, barred the Shallas' claims of negligence and fraudulent misrepresentation against Peoples Bank and Goerdt. The court of appeals decision is final as to all other issues.

## II.

"This case presents a question of statutory interpretation and construction, and 'our review is for the correction of errors at law.'" *Cianzio v. Iowa State Univ.*, 14 N.W.3d 716, 719 (Iowa 2024) (quoting *Doe v. State*, 943 N.W.2d 608, 609 (Iowa 2020)). Our task is "to determine the ordinary and fair meaning" of the statute at issue. *Doe*, 943 N.W.2d at 610. In making that determination, we consider the relevant statutes as a whole and in context and "not just isolated words and phrases." *Id.* (quoting *Iowa Dep't of Hum. Servs. v. Lohman* (*In re Est. of Melby*), 841 N.W.2d 867, 879 (Iowa 2014)). "Generally, when we conclude the express language of the statute is plain and the meaning is clear, we need not proceed any further with our analysis." *Cianzio*, 14 N.W.3d at 721.

We begin our analysis with the text of the statute. *See Doe,* 943 N.W.2d at 610 ("Any interpretive inquiry thus begins with the language of the statute at issue."). Iowa Code section 535.17(1) provides, "A credit agreement is not enforceable in contract law by way of action or defense by any party unless a writing exists which contains all of the material terms of the agreement and is signed by the party against whom enforcement is sought." A "credit agreement" is "any contract made or acquired by a lender to loan money, finance any transaction, or otherwise extend credit for any purpose, *and includes all of the terms of the contract." Id.* § 535.17(5)(*c*) (emphasis added). A "contract" is defined in section 535.17(5)(*b*) as a "promise or set of promises for the breach of which the law would give a remedy or the performance of which the law would recognize a duty, and includes promissory obligations based on instruments and similar documents or on the contract doctrine of promissory estoppel." *Id.* § 535.17(5)(*b*). When the general assembly acts as its own lexicographer, we are normally bound by its definitions, even if those definitions do not coincide with dictionary or common law definitions. *See State v. Pettijohn,* 899 N.W.2d 1, 15–16 (Iowa 2017), *overruled on other grounds by State v. Kilby,* 961 N.W.2d 374 (Iowa 2021).

The statutory text presents a threshold question when applied to the facts of this case: whether the Shallas' claims for negligence and fraudulent misrepresentation involve a "credit agreement" as defined in the statute. In an affidavit, Clint acknowledged that he approached Goerdt to secure financing. Specifically, Clint stated, "I knew I would need financing to exercise the option. I knew that Chris Goerdt at Peoples Trust and Savings Bank was making farm loans and so I contacted him. He agreed to be our representative to work with the Kochs in paying them off and to come up with the money." The record also reflects that Clint understood Goerdt's alleged statement that he was "taking

care of the buyback of the property" meant that Goerdt "would try to secure financing for" the Shallas.

Given the broad definition of the terms credit agreement and contract, we have little trouble concluding that Goerdt's promise or promises to the Shallas to assist them in obtaining financing to exercise the option was a credit agreement within the meaning of the statute. The Code defines "credit agreement" broadly. *See* Iowa Code § 535.17(5)(*c*). It includes "any contract made . . . to loan money" or "finance any transaction." *Id.* Goerdt's statements were oral promises to secure financing for a transaction, specifically, financing to exercise the buyback of the farm.

The Shallas do not dispute this on appeal. However, the Shallas argue that Goerdt made a second promise to represent and assist the Shallas in connection with the buyback of the farm. This promise, they contend, gives rise to claims outside the credit agreement statute of frauds. We disagree. The Code defines the term "contract" broadly to include any "promise or *set of promises*," plural, that would impose a duty of performance or that would give a remedy for a breach. *Id.* § 535.17(5)(*b*) (emphasis added). Any additional promise Goerdt made to represent or assist the Shallas in connection with exercising the option was part of a single transaction—to obtain financing to exercise the option. Under the plain language of section 535.17(5)(*c*), a credit agreement is not limited to just the terms of the loan or financing but includes "all of the terms of the contract." *Id.* § 535.17(5)(*c*). As such, the Shallas cannot slice up the terms of a single credit agreement into multiple promises to evade the statute of frauds. *See Ramsey v. Bank of Okla.*, No. 08–CV–0239–CVE–SAJ, 2008 WL 4936316, at *5 (N.D. Okla. Nov. 17, 2008) ("[P]laintiffs may not attempt to isolate the oral

agreement from the Credit Agreement to avoid application of the statute of frauds.").

The conclusion that the alleged promises or representations were part of a single credit agreement does not completely resolve the question presented in this appeal, however. The statute of frauds provides only that a credit agreement is "not enforceable *in contract law* by way of action or defense . . . unless a writing exists which contains all of the material terms of the agreement and is signed by the party against whom enforcement is sought." Iowa Code § 535.17(1) (emphasis added). The Shallas maintain that the credit agreement statute of frauds thus bars only contract claims and not tort claims, such as their claims for negligence and fraudulent misrepresentation.

The Shallas' argument has some superficial appeal. The statute does discuss the enforcement of claims in "contract law." *Id.* However, courts do not interpret words in a statute in isolation. "Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012).

Reading the statute as a whole, it becomes clear that the Shallas' interpretation of the statute is forbidden by the text of the statute. The legislature provided explicit guidance to courts in the application of this statute: "This section shall be interpreted and applied purposively to ensure that contract actions and defenses on credit agreements are supported by clear and certain written proof of the terms of such agreements to protect against fraud and to enhance the clear and predictable understanding of rights and duties under credit agreements." Iowa Code § 535.17(6); *see also Clinton Nat'l Bank v. Saucier,*

580 N.W.2d 717, 722 (Iowa 1998) ("Iowa Code section 535.17(6) controls over any ambiguity in the provisions of section 535.17 . . . ."). In accord with this broad purpose, the legislature placed an anti-circumvention provision into the statute so that parties cannot avoid the statute through artful pleading. Specifically, section 535.17(7) provides that the credit agreement statute of frauds "entirely displaces principles of common law and equity that would make or recognize exceptions to or otherwise limit or dilute the force and effect of its provisions concerning the enforcement in contract law of credit agreements or modifications of credit agreements." Iowa Code § 535.17(7). Allowing parties to avoid the credit agreement statute of frauds by repackaging contract claims as tort claims would undermine "the clear and predictable understanding of rights and duties under credit agreements," *id.* § 535.17(6), and it would permit plaintiffs to seriously "dilute the force and effect of [section 535.17's] provisions," *id.* § 535.17(7).

The Shallas' claims for negligence and fraudulent misrepresentation are merely repackaged contract claims barred by the statute. In *Sanborn Savings Bank v. Freed,* 38 F.4th 672, 675–77 (8th Cir. 2022), a mortgagee sought to enforce the terms of a mortgage agreement against a mortgagor in a dispute arising under Iowa law. The mortgagor responded by raising various equitable arguments. *Id.* at 679–80. The Eighth Circuit concluded that "a mortgage must necessarily be a 'credit agreement' under Iowa Code § 535.17(5)(*c*)." *Sanborn Sav. Bank,* 38 F.4th at 679. Then, the court held that any equitable arguments raised by the mortgagor were "untenable" because section 535.17(7) "entirely displaces principles of common law and equity that would . . . otherwise limit or dilute the force and effect" of section 535.17. *Id.* at 680 (quoting Iowa Code § 535.17(7)). As

such, the mortgagor's equitable arguments were "foreclosed" by the credit agreement statute of frauds. *Id.* at 679.

In *Geiger v. Peoples Trust & Savings Bank*, No. 18–1428, 2019 WL 4678179, at *4–6 (Iowa Ct. App. Sept. 25, 2019), the Iowa Court of Appeals aptly recognized that limiting section 535.17 only to contract claims would allow litigants to bypass the statute. *Geiger* features many of the same players and arguments that are before the court today. There, different plaintiffs brought a claim against Peoples Bank for fraudulent misrepresentation and interference with a contract after the plaintiffs entered into a loan agreement with Goerdt while he was serving as president of Peoples Bank. *Id.* at *1. The question presented in that case was the same question before the court today: whether the trial court correctly held that the plaintiffs' claims were barred by section 535.17 because they had entered an oral credit agreement with Goerdt. *Id.* at *3. The court of appeals answered that question in the affirmative, noting that allowing plaintiffs to argue that their claims sound in tort law, not contract law, would allow them to "end run section 535.17." *Id.* at *4. The plaintiffs "[could not] raise in tort what they cannot prove in contract: the existence of an enforceable contract." *Id.* at *6.

Similarly, in *Twiford Enterprises, Inc. v. Rolling Hills Bank & Trust*, No. 20–CV–28–F, 2020 WL 5248561, at *7–8 (D. Wyo. Aug. 5, 2020), the United States District Court for the District of Wyoming quoted *Geiger* and applied Iowa Code section 535.17 to bar the plaintiffs' claims of negligence and fraudulent and negligent misrepresentation. These tort claims were premised on the defendant's "oral representations in relation to 'an agreement by a bank to loan money.'" *Twiford Enters.*, 2020 WL 5248561, at *8 (quoting *Geiger*, 2019 WL 4678179, at *5). The court granted summary judgment for the defendant as it determined

that the alleged oral agreements were not enforceable under our state's credit agreement statute of frauds; therefore, the tort claims failed as a matter of law. *Id.*

Like we do today, courts around the country have concluded that their respective credit agreement statute of frauds bars all actions relating to the enforcement of promises in an unwritten credit agreement, no matter how the claim is packaged. *See, e.g., Dixon v. Countrywide Fin. Corp.*, 664 F. Supp. 2d 1304, 1310 (S.D. Fla. 2009) (holding that tort claims premised upon the same conduct and representations as a barred breach of contract claim were "likewise barred by the banking statute of frauds and must be dismissed"); *Horseshoe Ent., L.P. v. Gen. Elec. Cap. Corp.*, 990 F. Supp. 737, 743 (E.D. Mo. 1997) ("The majority of the cases [from other jurisdictions] hold that a credit agreement statute of frauds bars all actions based on an alleged oral credit agreement, regardless of the theory of recovery asserted. . . . '[T]o accept such allegations as affording recovery, grounded in concepts other than breach of contract, simply provides an easy avenue for resourceful attorneys to circumvent the [credit agreement] statute, thus defeating the legislative intent to prohibit claims stemming from hard-to-defend oral representations.'" (third alteration in original) (footnote omitted) (quoting *Fleming Irrigation, Inc. v. Pioneer Bank & Tr. Co.*, 661 So. 2d 1035, 1039 (La. Ct. App. 1995))); *Ohio Valley Plastics, Inc. v. Nat'l City Bank*, 687 N.E.2d 260, 263–64 (Ind. Ct. App. 1997) ("Regardless of whether the present cause of action is labeled as a breach of contract, misrepresentation, fraud, deceit, promissory estoppel, its substance is that of an action upon an agreement by a bank to loan money. Therefore, the Statute of Frauds applies."); *Jesco Const. Corp. v. Nationsbank Corp.*, 830 So. 2d 989, 992 (La. 2002) ("The

Louisiana Credit Agreement Statute precludes all actions for damages arising from oral credit agreements, regardless of the legal theory of recovery asserted.").

### III.

For these reasons, we affirm the judgment of the district court and the decision of the court of appeals. Pursuant to Iowa Code section 625.22, we hold that County Bank is entitled to appellate attorney fees. *See Bankers Tr. Co. v. Woltz*, 326 N.W.2d 274, 278 (Iowa 1982) ("The same rationale under section 625.22, which justifies awarding attorney fees in the trial court, also justifies awarding attorney fees in this appeal . . . ."); *GreenState Credit Union v. Prop. Holders, Ltd.*, No. 21–0498, 2022 WL 2154816, at *5 (Iowa Ct. App. June 15, 2022) ("Where attorney fees are awarded under section 625.22, a party may also be awarded appellate attorney fees."). We remand this matter to the district court for a determination of County Bank's attorney fees, including appellate attorney fees.

**Decision of Court of Appeals and District Court Judgment Affirmed and Case Remanded.**